20-3224; 22-70
*Black v. Almodovar*; *G.M. v. Almodovar*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of October, two thousand twenty-five.

Present:

DEBRA ANN LIVINGSTON,
  *Chief Judge,*
RAYMOND J. LOHIER, JR.,
RICHARD J. SULLIVAN,
JOSEPH F. BIANCO,
MICHAEL H. PARK,
WILLIAM J. NARDINI,
STEVEN J. MENASHI,
EUNICE C. LEE,
BETH ROBINSON,
MYRNA PÉREZ,
ALISON J. NATHAN,
SARAH A. L. MERRIAM,
MARIA ARAÚJO KAHN,
  *Circuit Judges.**

_____

CAROL WILLIAMS BLACK,

  *Petitioner-Appellee,*

  v.                                    20-3224

_____

* Judge Bianco took no part in the consideration of 22-70.

1

JUDITH ALMODOVAR, IN HER
OFFICIAL CAPACITY AS ACTING
DIRECTOR OF NEW YORK FIELD
OFFICE OF U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, KRISTI
NOEM, IN HER OFFICIAL CAPACITY AS
SECRETARY OF U.S. DEPARTMENT OF
HOMELAND SECURITY, PAUL ARTETA,
IN HIS OFFICIAL CAPACITY AS SHERIFF
OF ORANGE COUNTY, NEW YORK,

   *Respondents-Appellants.*

_____

KEISY G.M.,

   *Petitioner-Appellant*,

   v.           22-70

JUDITH ALMODOVAR, IN HER
OFFICIAL CAPACITY AS ACTING
DIRECTOR OF NEW YORK FIELD
OFFICE OF U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, PAMELA J.
BONDI, IN HER OFFICIAL CAPACITY AS
UNITED STATES ATTORNEY GENERAL,
KRISTI NOEM, IN HER OFFICIAL
CAPACITY AS SECRETARY OF U.S.
DEPARTMENT OF HOMELAND
SECURITY,

   *Respondents-Appellees*,

DAVID L. NEIL,

*Defendant-Appellee.*[†]

_____

In No. 20-3224

Adedayo Idowu, Law Offices of Adedayo O. Idowu, New York, NY, *for* Carol Williams Black, *Petitioner-Appellee.*

AMY BELSHER (Guadalupe Aguirre, Terry Ding, Christopher Dunn, *on the brief*), New York Civil Liberties Union Foundation, New York, NY, as Amicus Curiae *for* Carol Williams Black, *Petitioner-Appellee.*

MARY ELLEN BRENNAN (Christopher Connolly, *on the brief*), Assistant U.S. Attorneys, Of Counsel, *for* Jay Clayton, U.S. Attorney for the Southern District of New York, *for Respondents-Appellants.*

In No. 22-70

JULIE DONA (Aadhithi Padmanabhan, Laura Kokotailo, *on the brief*), The Legal Aid Society, New York, NY; Estelle M. McKee, Fei Deng, Student Counsel, Jordyn Manly, Student Counsel, Emma Sprotbery, Student Counsel, *on the brief*, Asylum and Convention Against Torture Clinic, Cornell Law School, Ithaca, NY, *for* Keisy G.M., *Petitioner-Appellant.*

MARY ELLEN BRENNAN (Jessica F. Rosenbaum, Benjamin H. Torrance, *on the brief*), Assistant U.S. Attorneys, Of Counsel, *for* Jay Clayton, U.S. Attorney for the Southern District of New York, *for Respondents-Appellees.*

---

[†] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Judith Almodovar—the current Acting Director of the New York Field Office of U.S. Customs and Immigration Enforcement—and Kristi Noem—the current Secretary of the U.S. Department of Homeland Security—are automatically substituted in the caption for their predecessors in office as respondents in No. 20-3224 and No. 22-70.  Pamela J. Bondi—the current United States Attorney General—is automatically substituted in the caption for her predecessor in that office as a respondent in No. 22-70.  The Clerk of Court is directed to amend the case caption to conform to the above.

Following disposition of this appeal on May 31, 2024, an active judge of the Court requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, the petition for rehearing *en banc* is hereby **DENIED**.

Raymond J. Lohier, Jr., *Circuit Judge*, joined by Eunice C. Lee, Beth Robinson, Myrna Pérez, Alison J. Nathan, Sarah A. L. Merriam, and Maria Araújo Kahn, *Circuit Judges*, concurs by opinion in the denial of rehearing *en banc*.

William J. Nardini, *Circuit Judge*, joined by Debra Ann Livingston, *Chief Judge*, Richard J. Sullivan, Michael H. Park, and Steven J. Menashi, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

Steven J. Menashi, *Circuit Judge*, joined by Debra Ann Livingston, *Chief Judge*, Richard J. Sullivan, and Michael H. Park, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

Denny Chin and Susan L. Carney, *Circuit Judges*, filed a statement with respect to the denial of rehearing *en banc*.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

20-3224; 22-70
*Black v. Almodovar*; *G.M. v. Almodovar*

LOHIER, *Circuit Judge*, joined by LEE, ROBINSON, PÉREZ, NATHAN, MERRIAM, and

KAHN, *Circuit Judges*, concurring in the denial of rehearing en banc:

For the reasons set forth in the excellent joint statement of my colleagues,

Senior Judges Chin and Carney, and in the panel opinion, *Black v. Decker*, 103

F.4th 133 (2d Cir. 2024), I concur fully in the decision to deny in banc rehearing in

this case.

1

20-3224; 22-70

*Black v. Almodovar; G.M. v. Almodovar*

NARDINI, *Circuit Judge*, joined by LIVINGSTON, *Chief Judge*, SULLIVAN, PARK, MENASHI, *Circuit Judges*, dissenting from the denial of rehearing *en banc*:

The petition for rehearing in this case raises two principal issues: (i) whether and under what circumstances a noncitizen's Fifth Amendment right to due process limits the period of his immigration detention without a bond hearing under 8 U.S.C. § 1226(c) (which requires the detention of certain noncitizens on statutorily defined criminal or national security grounds during their removal proceedings); and (ii) if such a hearing is required, which party bears the burden of proof and under what standard. The panel first held that due process precludes "unreasonably prolonged detention under section 1226(c) without a bond hearing." *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024). Then, applying the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the panel held that at such a

hearing, the government must justify continued detention by clear and convincing evidence.[1]  *Black*, 103 F.4th at 138.

The panel wrestled with these difficult questions with characteristic thoughtfulness.  But the panel's holding on the second issue—concerning the burden allocation and evidentiary standard if a hearing does occur—causes me concern for two principal reasons.

First, in concluding that due process requires the same remedy for prolonged detention under § 1226(c) as under § 1226(a), *see Velasco Lopez v. Decker*, 978 F.3d 842, 854–56 (2d Cir. 2020), the panel opinion does not account for key differences between the two statutory provisions and how those differences impact the due process analysis.  Section 1226(a) provides that in general, the Attorney General *may*, in her discretion, order the detention of any noncitizen

---

[1] The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

pending a removal decision, with regulations guaranteeing the noncitizen an initial bond hearing in the event of his detention. In contrast, § 1226(c) *mandates* the detention of a group of criminal noncitizens whom Congress has deemed to be especially troubling, and it does not, by its terms, authorize a bond hearing. Congress made this distinction based on significant evidence that criminal noncitizens posed unacceptably high risks of flight and recidivism, and with the purpose of eliminating those risks during the pendency of removal proceedings. The panel's decision to treat the two categories of detainees the same strikes me as being fundamentally at odds with that legislative choice.

But more to the point—the remedy it prescribes is not required by the Constitution. In announcing that the Due Process Clause *requires* that the burden of proof fall on the government, and that the burden can be met only by clear and convincing evidence, the panel opinion has effectively decreed that Congress has no power to set a

standard that demands more of a noncitizen who has been convicted of a qualifying crime, or who poses a national security risk. Because the panel opinion establishes a constitutional floor, it implicitly bars Congress from amending § 1226(c) to require, say, that the noncitizen bear the burden of proving by a preponderance of the evidence that he does not pose a danger to the community or a risk of flight. Nor would Congress even have leeway to place the burden on the government, but only by a preponderance of the evidence. I cannot see how the Constitution dictates such a result.

Second, and relatedly, a disjointed body of case law analyzing § 1226(a) and § 1226(c) has bubbled up through the circuits. Five Circuits have considered various due process challenges to these statutes, and their decisions diverge widely. Our Court has now decided—through the combination of the present case and *Velasco Lopez*—that under *both* statutes, prolonged detention must trigger a bond hearing in which (i) the government bears the burden, (ii) by

clear and convincing evidence. As to § 1226(a), the First Circuit agrees with our Court *in part* (requiring proof of dangerousness by clear and convincing evidence, but flight risk only by a preponderance), but the Fourth and Ninth Circuits go the other way entirely; they have held that due process allows the burden to remain with the noncitizen.[2] And the Third Circuit has gone with the Fourth and Ninth Circuit with respect to § 1226(a) (leaving the burden on the noncitizen) but with our Court on § 1226(c) (placing the burden on the government by clear and convincing evidence).[3] These all-over-the-map holdings present more than the usual circuit split. Put together, they're a circuit splat.

As discussed below, the Supreme Court left these constitutional questions open in *Jennings v. Rodriguez*, 583 U.S. 281,

---

[2] *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19, 39–40 (1st Cir. 2021), *with Miranda v. Garland*, 34 F.4th 338, 365–66 (4th Cir. 2022), *and Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022).

[3] *Compare Borbot v. Warden, Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279–80 (3d Cir. 2018) (§ 1226(a)), *with German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (§ 1226(c)).

5

312 (2018). I would have granted the government's petition for rehearing *en banc*. At this point, only the Supreme Court can clean up this intercircuit incoherence.

## I.

8 U.S.C. § 1226 governs the procedures for detaining noncitizens during the pendency of their removal proceedings. Section 1226(a) establishes the default rule, providing that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Following the arrest of a noncitizen under this subsection, the government may continue to detain the noncitizen or instead release him on bond or conditional parole. 8 U.S.C. § 1226(a)(2). If the Immigration and Customs Enforcement officer who makes the initial custody determination decides that continued detention is appropriate, the noncitizen may seek review of that decision at a bond hearing before an immigration judge ("IJ"),

and in the event of an adverse decision by the IJ, may appeal such decision to the Board of Immigration Appeals. 8 C.F.R. § 236.1(c)(8), (d)(1), (d)(3). To obtain release on bond under § 1226(a), "the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If a § 1226(a) detainee is denied bond at the initial hearing stage, he may later request a second hearing, but such a request will "be considered only upon a showing that the alien's circumstances have changed materially." *Id.* § 1003.19(e).

In contrast to § 1226(a)'s discretionary detention framework, § 1226(c) *requires* the detention of certain noncitizens who are inadmissible or deportable for having committed certain crimes or having engaged in terrorist activities, because Congress determined

that they pose a heightened bail risk as a class.[4]  This subsection

provides that "[t]he Attorney General *shall* take into custody any alien

who" is removable on any of various enumerated criminal or national

security grounds during the pendency of removal proceedings.

8 U.S.C. § 1226(c)(1) (emphasis added).  The government "*may*

release*" such a noncitizen only if (1) such release is necessary for

witness protection and (2) the noncitizen "satisfies the Attorney

General that [he] will not pose a danger to the safety of other persons

or of property and is likely to appear for any scheduled proceeding."

*Id.* § 1226(c)(4) (emphasis added).  Unlike § 1226(a) detainees,

noncitizens detained under § 1226(c) have no right by statute or

regulation to an initial bond hearing.

---

[4] As noted below, after the panel's opinion was filed, § 1226(c) was amended to cover even noncitizens who have merely been charged with or arrested for, or admitted to having committed, certain crimes.  *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  Because the petitioners here were detained under the prior version of § 1226(c), my analysis focuses on the statute as it existed then.

Despite the differences between these statutory schemes, the panel opinion determined that our holding in *Velasco Lopez*, 978 F.3d 842—that when a bond hearing occurs after unreasonably prolonged detention under § 1226(a), the government must justify continued detention by clear and convincing evidence—"applies with equal force" in the § 1226(c) context. *Black*, 103 F.4th at 157. I disagree.

Congressional authority is at its peak in the realm of immigration, and we therefore owe Congress's decisions over such matters considerable deference. Indeed, the Supreme Court has consistently recognized that "[o]ver no conceivable subject is the legislative power of Congress more complete" than immigration. *Reno v. Flores*, 507 U.S. 292, 305 (1993) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), which in turn was quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). And in recognition of that "broad power," the Court has approvingly acknowledged that "Congress regularly makes rules [for noncitizens] that would be

9

unacceptable if applied to citizens." *Id.* at 305–06 (internal quotation marks omitted). Accordingly, when a court evaluates what due process requires in a matter relating to immigration, "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Of course, Congress does not have carte blanche, but our task is to ascertain "the minimum procedures required by the Constitution," *Washington v. Harper*, 494 U.S. 210, 220 (1990) (internal quotation marks omitted), not to imagine what a different Congress might have done or to decide what, in *our* view, the ideal procedures would be, *see Landon*, 459 U.S. at 34–35 ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").

By applying the same burden allocation and evidentiary standard for unreasonably prolonged detention under both § 1226(a) and § 1226(c), the panel failed to accord adequate weight to Congress's deliberate choice to treat detainees under each statutory provision differently. Section 1226(c) reflects Congress's "justifiabl[e] concern[] that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." *Demore v. Kim*, 538 U.S. 510, 513 (2003). "Congress adopted this provision against a backdrop of wholesale failure by the [Immigration and Naturalization Service (the "INS")] to deal with increasing rates of criminal activity by aliens," and in light of "evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings."[5] *Id.* at 518–19. To

---

[5] For many years, the INS was the principal federal agency for immigration and border security matters. The Homeland Security Act of 2002 disbanded the INS, effective March 1, 2003, and created three new agencies to replace its

11

address those failures, Congress *mandated* the detention of a specified group of criminal noncitizens, whom it deemed to be especially troubling, during the pendency of their removal proceedings. *See id.* at 521. So strong was Congress's desire to ensure the successful removal of that subset of criminal noncitizens that it did not authorize a bond hearing at any point. Under § 1226(a), on the other hand, Congress merely authorized the *discretionary* detention of any noncitizen pending a removal decision, and the implementing regulations guarantee detainees an initial bond hearing (with the possibility of additional hearings). 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. § 236.1. The reason for the discrepancy is straightforward: Congress made "no similar findings regarding dangerousness or flight risk . . . as to the class of noncitizens detained under section 1226(a)." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 36 (1st Cir. 2021). Put simply, "§§ 1226(a) and (c) apply to discrete categories of noncitizens,"

---

functions: Customs and Border Protection, Immigration and Customs Enforcement, and Citizenship and Immigration Services.

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) (internal quotation marks omitted), and Congress deliberately created distinct detention frameworks for each category.

Given the differences between § 1226(a) and § 1226(c), I disagree with the panel's conclusion that the same burden allocation and evidentiary standard ought to apply in both contexts. It is axiomatic that "[t]he constitutional sufficiency of procedures provided in any situation . . . varies with the circumstances." *Landon*, 459 U.S. at 34. "The circumstances [of detention under the two provisions at issue here] are quite different." *Hernandez-Lara*, 10 F.4th at 36. "Unlike those mandatorily detained under § 1226(c), persons subject to detention under § 1226(a) . . . include individuals with no criminal record . . . ." *Velasco Lopez*, 978 F.3d at 854; *see also Hernandez-Lara*, 10 F.4th at 36 (underscoring the same distinction). In *Velasco Lopez*, we considered this distinction to be significant to our determination "that individuals subject to prolonged detention under

13

§ 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing," including by "shifting the burden of proof to the Government." 978 F.3d at 854. This distinction is equally relevant to the constitutional analysis here, and it supports reaching a different conclusion as to the process required to remedy prolonged detention under § 1226(c).

Congress's finding that § 1226(c) detainees "pose a heightened bail risk as a class," *id.* at 848, supports keeping the burden of proof on the detainee. In this scenario, detainees who have been subject to unreasonably prolonged detention without a hearing would get their day in immigration court, but they would need to overcome the presumption, which underlies the statutory scheme, that "releasing [them] on bond would lead to an unacceptable rate of flight" and recidivism. *Demore*, 538 U.S. at 518–20. The panel reasoned that requiring such detainees to "prove that they are *not* a danger and *not* a flight risk—after the government has enjoyed a presumption that

14

detention is necessary—presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged."  *Black*, 103 F.4th at 156; *see id.* at 155–56 (concluding that the second *Mathews* factor is dispositive of the burden allocation).  But the panel fails to explain why the presumption of detention changes with the mere passage of time, which in the panel's view could be as little as six months.  *See id.* at 150 ("[A]ny immigration detention exceeding six months without a bond hearing raises serious due process concerns.").

As the Supreme Court observed in *Demore*, the "detention of deportable criminal aliens *pending their removal proceedings* . . . necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  538 U.S. at 527–28.  "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require

15

it to employ the least burdensome means to accomplish its goal." *Id.* at 528. And it certainly does not need to employ the least burdensome means when addressing the detention of noncitizens whose criminal records implicate national security risks and other concerns. *See id.* (stating that the "evidence [regarding flight risk and recidivism among criminal noncitizens that] Congress had before it certainly supports the approach it selected"—that is, mandating detention for the class of criminal noncitizens covered by § 1226(c)).[6]

Consider the Bail Reform Act. In support of its conclusion that the government must justify continued detention by clear and convincing evidence, the panel points to the Supreme Court's observation in *United States v. Salerno*, 481 U.S. 739 (1987)—which rejected a constitutional challenge to the Bail Reform Act—that

---

[6] The Supreme Court has recognized that "reasonable presumptions and generic rules . . . are not necessarily impermissible exercises of Congress' traditional power to legislate with respect to aliens," *Demore*, 538 U.S. at 526 (internal quotation marks omitted), particularly when, as here, the presumption is based on a record of criminal activity or activity that is deemed to present a national security threat.

"pretrial detention is permitted when the government can justify its need by clear and convincing evidence." *Black*, 103 F.4th at 158 (citing *Salerno*, 481 U.S. at 751). But that observation pertained to the Bail Reform Act's discretionary detention provision, which, like § 1226(a), applies to a broad class—any arrestee. *See* 18 U.S.C. § 3142(f)(2). Notably, the statute also singles out a subgroup of persons, not unlike § 1226(c), by creating "a rebuttable presumption" for certain arrestees (regardless of their citizenship status) that "no condition or combination of conditions will reasonably assure the safety of any other person and the community," *id.* § 3142(e)(2), or "reasonably assure the appearance of the person as required and the safety of the community," *id.* § 3142(e)(3). Arrestees face this presumption in certain circumstances if they have previously been convicted of an offense listed in 18 U.S.C. § 3142(f)(1), such as a crime of violence, or if the judge "finds that there is probable cause to believe" that they have committed an offense listed in § 3142(e)(3), such as a specified

drug crime carrying a maximum term of imprisonment of ten years or more. *Id.* § 3142(e)(2), (e)(3), (f)(1). In these cases, the presumption shifts from releasing the arrestee on bail, as in the typical case, to detaining him, even before the arrestee is convicted. When the presumption applies, the defendant must "introduce some evidence . . . to rebut the presumption," and even when the "defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant." *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991). So even in *Salerno*, where the Court considered a statute that allows for detention for risk of flight based on a preponderance of the evidence, and danger to the community based on clear and convincing evidence, due process permitted for the introduction of a presumption that significantly altered the detention calculus. And although the *Salerno* Court had no occasion to consider it, 18 U.S.C.

18

§ 3143—which governs detention of a convicted defendant pending sentence or appeal—flips the burden: Detention is mandatory unless the judge finds by clear and convincing evidence *both* that the person is not likely a flight risk or danger to the community.

The Supreme Court's approval of Congress's decision to single out a certain category of persons (citizens included) for presumptive detention under the Bail Reform Act reinforces the validity of Congress's choice to do so under § 1226(c). In addressing a challenge to detention under § 1226(a), the Fourth Circuit, relying on *Salerno*, stated: "If, in the criminal context, requiring citizens to bear the burden to show that they are not a danger to the community and a flight risk is not unconstitutional, it cannot be unconstitutional for the government to place a similar burden on an alien facing removal proceedings, especially considering the detention lasts only until removal." *Miranda v. Garland*, 34 F.4th 338, 363 (4th Cir. 2022). This well-founded proposition applies with even greater force to the

removable noncitizens detained under § 1226(c), who have been convicted of a crime, even when their detention has become unreasonably prolonged. The remedy for § 1226(c) detainees who have been subject to such detention is the bond hearing that they would otherwise be denied entirely. *See Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks omitted)). There is no constitutional basis for requiring, in addition, that the government bear the burden of proof at that hearing. The presumption of detention need not disappear entirely.

In summary, the panel's prescribed remedy for prolonged detention under § 1226(c) exceeds what the Constitution requires.

## II.

In *Demore*, the Supreme Court rejected a facial challenge to the constitutionality of 8 U.S.C. § 1226(c). 538 U.S. 510. More recently, in

20

*Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court considered a challenge asserting that §§ 1226(a) and 1226(c) do not authorize prolonged detention absent a bond hearing at which the government must prove by clear and convincing evidence that continued detention is justified.[7] The Court resolved the case solely on statutory grounds, declining to consider the respondents' constitutional argument that prolonged detention under these provisions without a bond hearing violated their due process rights. *Id.* at 312. Thus, the question whether unreasonably prolonged detention under § 1226(c) may violate due process, and if so, what remedy is required, has been left to percolate through the lower courts.

The panel and several other members of this Court voted to deny rehearing in part because the only other circuit that has addressed this narrow question, regarding § 1226(c), reached the same conclusion as the panel, including with respect to the burden

---

[7] *Jennings* also involved a challenge to § 1225(b), but that provision is not at issue here.

21

allocation and evidentiary standard. That observation is correct as far as it goes. In *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 206 (3d Cir. 2020), the Third Circuit, like the panel here, held that when detention under § 1226(c) becomes unreasonably prolonged, the detainee is entitled to a bond hearing at which "the Government must justify his continued detention by clear and convincing evidence." But courts, including the panel here, have consistently analyzed § 1226(c) in relation to § 1226(a), and vice versa. *See, e.g.*, *Black*, 103 F.4th at 149 ("That *Velasco Lopez* dealt with section 1226(a) detention means only that the case is not directly binding here, not that its reasoning is irrelevant."); *id.* at 157 ("Once those detentions [under §§ 1226(a) and (c)] have been unconstitutionally prolonged, the due process analysis adopted in *Velasco Lopez* applies with equal force to both situations."). It is therefore critical to consider the broader state of the case law regarding constitutional claims arising under either provision.

Since *Jennings*, four circuits other than ours have considered whether due process requires the government to bear the burden of proof at bond hearings for noncitizens detained under § 1226(a) or § 1226(c). In the § 1226(a) context, the First Circuit has held that even at the initial bond hearing, due process requires the government to bear the burden of proving dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *See Hernandez-Lara*, 10 F.4th at 39–40. The Third, Fourth, and Ninth Circuits, on the other hand, have held that due process does not require shifting the burden from the noncitizen to the government in a § 1226(a) bond hearing. *See Borbot v. Warden, Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Miranda*, 34 F.4th at 366; *Rodriguez Diaz*, 53 F.4th at 1213. And as noted above, in the § 1226(c) context, the Third Circuit has held—in contrast to its holding in the § 1226(a) context—that the burden of proof belongs to the government. *See German Santos*, 965 F.3d at 214.

One might argue that the § 1226(a) cases in the Third and Fourth Circuits addressed due process requirements only for the *initial* bond hearing, not for a hearing once the detention has become unreasonably prolonged. But neither circuit cabined its opinion that narrowly. In *Borbot*, which involved a habeas petitioner's request for a second bond hearing, the Third Circuit noted that the petitioner was "correct to point out that *Diop* [*v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011),*] places the burden of proof on the government in § 1226(c)" bond hearings offered as a remedy for "unreasonably long" detention, "whereas under § 1226(a) the burden remains on the detainee *at all times*." 906 F.3d at 277, 279 (emphasis added). The court "perceive[d] no problem with this distinction." *Id.* at 279. In other words, the Third Circuit expressly contrasted the procedures for § 1226(c) bond hearings *in the context of unreasonably prolonged detention* with the unchanging procedures for § 1226(a) hearings.

24

Thus, any attempt to cabin *Borbot* to initial § 1226(a) hearings would be unpersuasive.[8]

Nor does anything in *Miranda* limit its analysis to initial § 1226(a) hearings. To the contrary, the Fourth Circuit emphasized that "aliens are due less process when facing removal hearings than an ordinary citizen would have," and that "it cannot be unconstitutional" to require "an alien facing removal proceedings" to "bear the burden to show that [he is] not a danger to the community and a flight risk." *Miranda*, 34 F.4th at 361, 363. Moreover, the court "agree[d] with the Third Circuit's view of the burden of proof

---

[8] Moreover, the Third Circuit stated that because Borbot failed to demonstrate that his detention was unreasonably prolonged, the court "need not decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing in order to conclude that [his] due process rights were not violated." *Borbot*, 906 F.3d at 280. Notably, the court limited that hypothetical to whether *a new hearing* would be required, making no mention of whether *the burden of proof would need to shift to the government* at such a hearing, despite Borbot's argument on that point. This further supports reading "at all times," *id.* at 279, to include subsequent bond hearings, even when the detention has become unreasonably prolonged.

25

procedures in § 1226(a)," namely, that "the alien bear[s] the burden of proof." *Id.* at 366 (citing *Borbot*, 906 F.3d at 279).

In any event, the panel places its emphasis in the wrong place. As discussed above, it is the *category of noncitizens* at issue that principally matters for our due process analysis, not the timing of the hearing along the detention continuum. *See Rodriguez Diaz*, 53 F.4th at 1201 (recognizing "that under the Supreme Court's . . . decision in *Jennings*, §§ 1226(a) and (c) apply to discrete categories of noncitizens—and *not* to different stages of a noncitizen's legal proceedings" (internal quotation marks omitted)).

This misplaced emphasis skewed the outcome of the panel's *Mathews* analysis. Congress placed its thumb on the scale in favor of detention for noncitizens covered by § 1226(c), going so far as to mandate it. Thus, in this context, as compared with the discretionary detention regime under § 1226(a), the government's interest is relatively stronger, and the detainee's relatively weaker, while the

risk of error is effectively the same. One would expect that plugging these different inputs into the *Mathews* test in the § 1226(c) context would yield a different output than in the § 1226(a) context. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[N]ot all situations calling for procedural safeguards call for the same kind of procedure."). Yet the panel's reasoning produced the same outcome. Even assuming that when the *Mathews* factors are properly weighted in the § 1226(c) context, due process may eventually require that a detainee receive a bond hearing, it certainly does not require shifting the burden of proof from the detainee to the government, much less requiring the government to justify continued detention by the heightened standard of clear and convincing evidence.

\* \* \*

In my view, the varying approaches taken by several courts of appeals underscore why we should have granted the government's petition for rehearing *en banc* here. Consider the Third Circuit's

27

contrasting decisions in *Borbot* and *German Santos*. Under *Borbot*, § 1226(a) detainees bear the burden of proof even though many of them have no criminal history, much less the type of criminal record that Congress deemed to warrant mandatory detention under § 1226(c), as the First Circuit and this Court have recognized. *See Hernandez-Lara*, 10 F.4th at 36 ("Unlike section 1226(c), section 1226(a) applies to a wide swath of noncitizens, many of whom . . . have no criminal record at all."); *Velasco Lopez*, 978 F.3d at 854 (noting that "[u]nlike those mandatorily detained under § 1226(c), persons subject to detention under § 1226(a) . . . include individuals with no criminal record"). Yet under *German Santos*, § 1226(c) detainees, who by definition were convicted of particularly serious crimes such as murder or robbery or engaged in terrorist activities, face no such burden as soon as they become entitled to a hearing; instead, the government must justify their continued detention by clear and convincing evidence. This is a peculiar result, and it runs

28

counter to the entire statutory scheme. Congress enacted § 1226(c) precisely because it wanted to ensure that the covered noncitizens would be detained pending their removal proceedings, absent the narrowest of circumstances, on the ground that they presented a heightened risk of danger to the community, or risk of flight, in contrast to the detainees under § 1226(a), whom Congress permitted to be released on bond at the discretion of the Attorney General. Given this statutory framework, it strikes me as profoundly wrong to make it no more difficult to obtain release at a bond hearing for § 1226(c) detainees than for § 1226(a) detainees, when detention for either has become unreasonably prolonged in the same measure.

I believe that the rule with respect to § 1226(c) hearings should be what multiple other circuits have said about § 1226(a) hearings: namely, that it is consistent with due process to require the detainee to bear the burden of proving, by a preponderance of the evidence, that he presents neither a danger to the community nor a risk of flight.

*See Miranda*, 34 F.4th at 365–66; *Rodriguez Diaz*, 53 F.4th at 1213; *see also*

*Borbot*, 906 F.3d at 279 ("[U]nder § 1226(a) the burden remains on the

detainee at all times.").  Although some judges might perhaps have

drawn the line between the panel's and mine (say, placing the burden

on the government, but only by a preponderance of the evidence),

rehearing this case *en banc* would have given us an opportunity to

grapple collectively with where to draw it.

Moreover, this case has the potential to affect a substantial

number of immigration proceedings within our jurisdiction and

nationwide.  In New York alone, U.S. Immigration and Customs

Enforcement ("ICE") detained 4,770 noncitizens with criminal

convictions during the period between October of 2020 and January

of 2025; nationwide, there were over 236,000 ICE detainees with

criminal convictions during that period.[9]  While the available data do

---

[9] *See ICE Enforcement and Removal Operations Statistics*, U.S. Immigr. & Customs Enf't (May 30, 2025), https://www.ice.gov/spotlight/statistics [https://perma.cc/SE2V-GBBC].

not identify the number of noncitizens detained pursuant to § 1226(c), these figures nonetheless suggest that this decision will likely affect many cases and carry wide-ranging implications.

It is worth noting that after the government filed its petition, Congress amended § 1226(c) to expand the category of covered crimes, and to require the detention not only of those who have been convicted of any of the newly added crimes but also of anyone who has been accused of one. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). But it seems to me that the panel holding regarding the burden of proof at a bond hearing remains binding as to petitioners who fall within the scope of the pre-amendment version of the statute; the only open question for a future panel would be whether this holding also applies to petitioners falling within the expanded scope. While other considerations might apply to the amendments (say, to petitioners who have been arrested but not yet convicted), our *en banc* Court would not have been called upon to

express a view on the revised statute because the two petitioners in this case were convicted of crimes covered by the prior version. Accordingly, I do not believe that the amendments provide support for the Court's decision to abstain from rehearing.

For all these reasons, I respectfully dissent from the denial of rehearing *en banc*.

20-3224; 22-70
*Black v. Almodovar*; *G.M. v. Almodovar*

MENASHI, *Circuit Judge*, joined by LIVINGSTON, *Chief Judge*, and SULLIVAN and PARK, *Circuit Judges*, dissenting from the denial of rehearing *en banc*:

The panel in these cases held that the requirement of mandatory detention pending removal proceedings that Congress adopted in 8 U.S.C. § 1226(c) is unconstitutional. According to the panel, the Due Process Clause instead requires a court to determine whether the detention has become "unreasonably prolonged" and to conduct individualized bond hearings based on *Mathews* balancing. *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024).

"Invalidating an act of Congress is 'the gravest and most delicate duty that a federal court is called on to perform.'" *Fuld v. PLO*, 101 F.4th 190, 204 (2d Cir. 2024) (Menashi, J., dissenting from the denial of rehearing en banc) (alteration omitted) (quoting *Blodgett v. Holden*, 275 U.S. 142, 148 (1927)). It is especially delicate given "the need for special judicial deference to congressional policy choices in the immigration context." *Fiallo v. Bell*, 430 U.S. 787, 793 (1977). I would reconsider these cases not only because of the improper assignment of the burden of proof, *see ante* at 1 (Nardini, J., dissenting from the denial of rehearing en banc), but also because the panel opinion provided no persuasive justification for invalidating the congressional policy reflected in § 1226(c) in the first place.

According to the panel opinion, *Mathews* "provides the proper framework to assess Black's and G.M.'s respective due process challenges" because an alien has a "significant liberty interest" to be free from "unreasonably prolonged" detention in the United States while removal proceedings are pending. *Black*, 103 F.4th at 148-51. That holding entrenches a split with the Eighth Circuit, which has squarely held that *Mathews* balancing does not apply to a challenge to

detention under § 1226(c). The Eighth Circuit explained that the decisions of the Supreme Court in *Zadvydas* and *Demore* "leave no room for a multi-factor 'reasonableness' test" in evaluating a § 1226(c) detention because the Supreme Court has "already done whatever balancing is necessary" and has "opted for a bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still pending." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (internal quotation marks and emphasis omitted).

The Eighth Circuit has the better reading of the case law, which means that the panel opinion conflicts not only with that circuit but also with controlling decisions of the Supreme Court. Those decisions establish that (1) a detention under § 1226(c) has a definite termination point, so it does not implicate the due process concerns associated with indefinite detention, and (2) a removable alien does not have a "significant liberty interest" to be released into the United States while removal proceedings are pending. As a result, there is no legal basis for invalidating a statute that requires detention without a bond hearing while removal proceedings are pending.

I would rehear these cases *en banc* because "the panel decision conflicts with a decision of the United States Supreme Court," Fed. R. App. P. 40(b)(2)(B), "the panel decision conflicts with an authoritative decision of another United States court of appeals," *id.* 40(b)(2)(C), and "the proceeding involves one or more questions of exceptional importance" given that the panel invalidated an act of Congress in the immigration context, *id.* 40(b)(2)(D).[1] I dissent from the denial of the petition for rehearing *en banc*.

---

[1] "The invalidation of a federal statute is a primary reason for the Supreme Court to grant a petition for certiorari," *Fuld*, 101 F.4th at 205 n.3 (Menashi, J.,

2

**I**

The panel opinion concluded that *Zadvydas* and *Demore* "imply … that any immigration detention exceeding six months without a bond hearing"—including detention pursuant to § 1226(c)—"raises serious due process concerns." *Black*, 103 F.4th at 150. But the Supreme Court has distinguished detention under § 1226(c) from the sort of indefinite detention that raises such concerns:

> In *Demore v. Kim*, we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out that detention under § 1226(c) has "a definite termination point": the conclusion of removal proceedings. As we made clear there, that "definite termination point"—and not some arbitrary time limit devised by courts—marks the end of the Government's detention authority under § 1226(c).

*Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018) (citation omitted) (quoting *Demore v. Kim*, 538 U.S. 510, 529 (2003)). In *Demore*, the Court acknowledged that an indefinite detention may raise due process concerns, but it held that the detention in that case was permissible precisely because a detention under § 1226(c) is neither "indefinite" nor "potentially permanent." *Demore*, 538 U.S. at 528. The fact that a § 1226(c) detention has "a definite termination point" makes it "materially different" from the detention considered in *Zadvydas*. *Id.* at 528-29.

Indeed, *Zadvydas* itself recognized the same distinction. The Court distinguished the provision at issue in that case from § 1226(c)

_____

dissenting from the denial of rehearing en banc), alongside conflicts with the Supreme Court and with another court of appeals, *see* Sup. Ct. R. 10(a), (c).

3

based on the indefiniteness of the detention: "importantly," said the Court, "post-removal-period detention, *unlike detention pending a determination of removability* or during the subsequent 90-day removal period, has no obvious termination point." *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) (emphasis added); *see also Demore*, 538 U.S. at 529 ("*Zadvydas* distinguished the statutory provision it was there considering from § 1226 on these very grounds."). The indefiniteness of the detention—not its mere length—implicated the Due Process Clause.

The *Zadvydas* Court held that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In other words, only "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Due process considerations arise once removal is no longer foreseeable because "where detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Id.* at 690 (internal quotation marks and alterations omitted). In *Zadvydas*, the purpose was "ensuring the appearance of aliens at future immigration proceedings." *Id.* Under the circumstances of *Zadvydas*—in which removal proceedings had ended, a final order of removal had issued, the statutory removal period had expired, and there still was no likelihood of effectuating the removal—the detention no longer appeared to serve the purpose of facilitating ongoing removal

4

proceedings.[2] The government therefore needed to justify the continued detention.

Those circumstances bear no resemblance to a § 1226(c) detention. Detention under § 1226(c) is authorized—and required—until the conclusion of removal proceedings. The statute authorizes release during that period "*only* if … release … is necessary to provide protection to a witness … and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4) (emphasis added). The Supreme Court has recognized that the "detention of deportable criminal aliens *pending their removal proceedings* … necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527-28 (emphasis in original). The detention "necessarily" continues to serve that purpose as long as the removal proceedings remain pending. Thus, the Supreme Court has already explained that the key principle of *Zadvydas*—"[c]essante ratione legis cessat ipse lex," requiring that a detention which no longer serves its purpose receive an additional justification—does not apply to a detention pursuant to

---

[2] *See Demore*, 538 U.S. at 527 ("[I]n *Zadvydas*, the aliens challenging their detention following final orders of deportation were ones for whom removal was 'no longer practically attainable.' The Court thus held that the detention there did not serve its purported immigration purpose.") (citation omitted).

§ 1226(c). *Zadvydas*, 533 U.S. at 699 (quoting 1 Edward Coke, Institutes *70b).[3]

**A**

There is no suggestion in these cases that the government will be unable to remove either G.M. or Black at the conclusion of the removal proceedings such that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. To the contrary, the detentions here have been prolonged not because of the government's inability to effectuate the removals but because of the petitioners' own litigation conduct.

---

[3] The statement respecting the denial of rehearing *en banc* nonsensically insists that my position is that "no individual could *ever* challenge his or her detention … even if the detention became indefinite or, worse, permanent." *Post* at 3. But I have just explained that the lack of a definite termination point is what justifies such a challenge. The statement tendentiously focuses on the *Demore* Court's characterization of "the brief period necessary for [an alien's] removal proceedings," *Demore*, 538 U.S. at 513, as if the length of the detention rather than the definite termination point were the ground of the decision. *See post* at 7. "But 'judicial opinions are not statutes, and we don't dissect them word-by-word as if they were'" because "we rely on the principles the Court articulated" to guide future cases. *United States v. Chastain*, 145 F.4th 282, 294 n.4 (2d Cir. 2025) (quoting *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting)). Those principles did not turn on the length of the detention but on the foreseeability of its termination. In any event, the Supreme Court understood the respondent in *Demore* to have been "detained for somewhat longer than the average" but that was because the "respondent himself had requested a continuance of his removal hearing." 538 U.S. at 530-31. The petitioners in these cases also sought continuances and other delays of their removal proceedings, but the panel opinion wrongly discounted the relevance of their litigation conduct. *See infra* Part I.A.

G.M. was a lawful permanent resident when he was convicted of assault based on his stealing a phone and attacking someone with a belt. *See* G.M. App'x 161-65, 217. The government charged him with removability based on his commission of an aggravated felony. He was ordered removed within five and a half months of his arrest. *See id.* at 218-21 (¶¶ 11, 24). During that time, he received several adjournments and continuances to file applications for immigration relief despite his being removable based on his criminal conduct. *See id.* at 201-10, 218-22 (¶¶ 12-24). G.M. applied for relief including deferral of removal under the Convention Against Torture ("CAT"). *See id.* at 220 (¶ 20).[4] G.M. then appealed the IJ's denial of CAT relief to the BIA. *See* G.M. App'x 73 (¶ 20).

Black was a lawful permanent resident when he was convicted of sexual abuse of a minor and of endangering the welfare of a child. The government charged him with removability based on his commission of an aggravated felony and a crime of child abuse. *See* Black App'x 110. He was detained for seven months before the district court granted habeas relief. *See id.* at 177. During that time, he conceded that he was removable for having been convicted of a crime of domestic violence, stalking, child abuse, child neglect, or child abandonment. *See* 8 U.S.C. § 1227(a)(2)(E)(i). The IJ repeatedly rejected his challenge that he was not removable for having been convicted of an aggravated felony. *See id.* § 1227(a)(2)(A)(iii); Black

---

[4] The immigration judge granted most of G.M.'s requests to delay the proceedings. But when G.M.'s counsel requested a sixth adjournment of an additional four to five weeks "to prepare the case," the IJ granted only a three-week adjournment. *See* G.M. App'x 220 (¶ 20).

App'x 147, 149-52, 157-58 (¶¶ 17-18).[5] Throughout his detention, he repeatedly sought release pending the removal proceedings, which the IJ denied, and sought adjournments and continuances to file applications for asylum and withholding of removal; the IJ granted those requests to delay the proceedings. *See* Black App'x 149-52, 157-61.

This litigation conduct might have involved "dilatory and obstructive tactics," or it might have involved difficult choices taken in good faith to seek immigration relief and thereby to extend the corresponding detention. *Demore*, 538 U.S. at 530 n.14. Either way, "the legal system is replete with situations requiring the making of difficult judgments as to which course to follow, and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices." *Id.* (internal quotation marks and alteration omitted). The district court in the *G.M.* case correctly explained that "Petitioner of course had every right to appeal to the BIA, but his pursuit of that appeal after an adverse decision should not permit him to secure release from custody when Congress otherwise mandated it, absent a delay in the BIA process that runs afoul of the due process clause." *G.M. v. Decker*, No. 21-CV-4440, 2021

---

[5] That was not a close question. As the IJ explained, Black "was convicted, after a jury trial, of *inter alia* Sexual Abuse in the First Degree, in violation of NYPL § 130.65(3)," which criminalizes "subjecting a person under eleven years old to sexual contact." Black App'x 150. "While not disputing the fact of his conviction," Black argued that his offense was not "categorically an aggravated felony." *Id.* But the BIA had already "held that the lesser offense of Sexual Abuse in the Second Degree, in violation of NYPL § 130.60(2), constitutes an aggravated felony sexual abuse of a minor" under 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* at 151 (citing *Matter of Small*, 23 I. & N. Dec. 448 (B.I.A. 2002)). And the language of each statute is "identical except for the age of the victim." *Id.*

8

WL 5567670, at *11 (S.D.N.Y. Nov. 29, 2021).[6] Our own court has previously held that "[a]lthough this litigation strategy is perfectly permissible," an alien "may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process." *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).[7]

---

[6] The district courts have long recognized this straightforward principle. *See, e.g.*, *Baker v. Johnson*, 109 F. Supp. 3d 571, 586 (S.D.N.Y. 2015) ("To the extent the proceedings are extended by appeals or by motion practice initiated by Petitioner, the Court properly takes into account the fact that Petitioner's continued detention may be at least in part a result of his choice to appeal and otherwise prolong the proceedings with motion practice.") (internal quotation marks and alterations omitted); *Debel v. Dubois*, No. 13-CV-6028, 2014 WL 1689042, at *6 (S.D.N.Y. Apr. 24, 2014) ("Delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country."); *Johnson v. Orsino*, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013) ("Although Johnson indisputably 'has every right to seek any relief from deportation for which he may be eligible, delay caused by his actions does not make continued detention unreasonable or unjustified.'") (quoting *Andreenko v. Holder*, No. 09-CV-8535, 2010 WL 2900363, at *4 (S.D.N.Y. June 25, 2010)); *Adler v. DHS*, No. 09-CV-4093, 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) ("Although it is Adler's right to seek relief from deportation, the delays caused by his motions should not be attributed to the government.").

[7] *See also Thevarajah v. McElroy*, No. 01-CV-3009, 2002 WL 923914, at *5 (E.D.N.Y. Apr. 30, 2002) ("This Circuit does not … permit an alien to rely on the lengthening of detention caused by his litigation strategy to claim that his prolonged detention violates substantive due process. This conclusion is consistent with *Zadvydas*, which focused on the constitutionality of indefinite detention in the case of aliens placed in deportation limbo because their countries of origin had refused to allow them entrance, not on aliens whose detention is lengthened largely because of their own actions.") (internal quotation marks, citations, and alteration omitted).

I would adhere to that precedent. The fact is that "an alien detained under § 1226(c) 'has the keys in his pocket' and can 'end his detention immediately' by 'withdrawing his defense and returning to his native land.'" *Banyee*, 115 F.4th at 933 (alterations omitted) (quoting *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)). It is a perverse interpretation of the Due Process Clause under which Congress, by affording a criminal alien *more* process to contest his removal and to seek immigration relief, thereby invalidates its own authority to detain the alien until the process concludes.

**B**

The Supreme Court was emphatic in *Jennings* that courts must respect the requirement of mandatory detention that Congress adopted in § 1226(c). The Court explained that "§ 1226(c) is *not* 'silent' as to the length of detention. It mandates detention 'pending a decision on whether the alien is to be removed from the United States,' and it expressly prohibits release from that detention except for narrow, witness-protection purposes." *Jennings*, 583 U.S. at 304 (emphasis in original) (citation omitted). That express language leaves no room for interpreting the statute, pursuant to the constitutional avoidance canon, to contain an implicit limit on the length of an authorized detention: "Even if courts were permitted to fashion 6-month time limits out of statutory silence, they certainly may not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy." *Id.*

The panel opinion dismissed *Jennings* as "a statutory decision" that "did not answer the question whether due process places any limits on the government's detention authority under section 1226(c)." *Black*, 103 F.4th at 142-44 (emphasis omitted). It is true that

10

in *Jennings*, the Ninth Circuit had "erroneously concluded that periodic bond hearings are required under the immigration provisions," so the Ninth Circuit "had no occasion to consider respondents' constitutional arguments on their merits." *Jennings*, 583 U.S. at 312. As a result, the Supreme Court also did "not reach those arguments." *Id.*

But because the Supreme Court has foreclosed the constitutional avoidance approach it followed in *Zadvydas* with respect to § 1226(c), our court has now gone beyond *Zadvydas* to declare § 1226(c) unconstitutional to the extent that it "mandates detention pending a decision on whether the alien is to be removed from the United States" and "prohibits release from that detention except for narrow [specified] purposes." *Jennings*, 583 U.S. at 304 (internal quotation marks omitted). According to the panel opinion, "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing," so Congress violated the Constitution when it directed the executive branch to detain criminal aliens throughout the removal proceedings and prohibited release through bond hearings. *Black*, 103 F.4th at 145.

The statement protests that the panel opinion did not *facially* invalidate § 1226(c) but instead authorized a series of *as-applied* challenges by each individual detainee. *See post* at 2-3. The statement pretends that this position is consistent with what the government argued in *Demore*. *See id.* at 11. But that is not true. The government argued that "[t]he mandatory detention provisions of Section 1226(c) are constitutional in the ordinary case," and only those "*exceptional circumstances* that present special due process concerns" would be

"addressed on a case-by-case basis."[8] These cases are ordinary. No one has argued that the government brought sham removal proceedings or engaged in abusive conduct that created "a delay in the BIA process." *G.M.*, 2021 WL 5567670, at *11. Instead, Black and G.M. were long-ago adjudicated to be removable,[9] and their detentions continued only because of the "normal consideration of an alien's appeal of adverse decisions." *Debel*, 2014 WL 1689042, at *6. Black and G.M. each continued to litigate but always had "the keys [to release] in his pocket." *Banyee*, 115 F.4th at 933 (quoting *Parra*, 172 F.3d at 958).

"[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Here, Congress provided for mandatory detention without the possibility of a bond hearing or of release except for statutorily specified reasons. The panel opinion has instead directed district courts to entertain as-applied challenges by detainees in the form of bond hearings based on *Mathews* balancing. That means the congressional policy of mandatory detention has been replaced with the judicial policy of individualized bond hearings. That amounts to the invalidation of § 1226(c).

---

[8] Brief for the Petitioners at 48-49, *Demore v. Kim*, No. 01-1491 (U.S. Aug. 29, 2002), 2002 WL 31016560, at *48-49 (emphasis added). Similarly, the Solicitor General said at oral argument that an as-applied challenge would be appropriate "if there's some question about an *aberrational* lengthy detention" in an individual case. Transcript of Oral Argument at 56, *Demore v. Kim*, No. 01-1491 (U.S. Jan. 15, 2003) (emphasis added).

[9] *See* Black App'x 98 ("At a master calendar hearing on February 24, 2020, the Court sustained both charges of removability."); G.M. App'x 184 ("[A] previous Immigration Judge sustained the charges of removability under the INA.").

12

The statement even admits that the panel rewrote the statute to depart from the text that Congress adopted. The statement notes that "*other* types of civil detention generally require a bond hearing near the outset of detention." *Post* at 6 (emphasis added). In other words, Congress knows how to write a civil detention statute that provides for bond hearings. But it decided not to include such a provision in § 1226(c). We have a "duty to refrain from reading a phrase into the statute when Congress has left it out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). With respect to § 1226(c), the Supreme Court has expressly held that there is no way to read the text of the statute to include a time limit on the length of the detention or to authorize release from detention for any reason other than "narrow, witness-protection purposes." *Jennings*, 583 U.S. at 304. The panel opinion invalidated the scheme of mandatory detention that Congress adopted and replaced it with a scheme of individualized bond hearings of the panel's own making.

That invalidation has no support in the applicable precedents. The statute at issue in these cases does not contain the "ambiguous" language that the Supreme Court could construe in *Zadvydas*. And even in *Zadvydas*, the application of the constitutional avoidance canon was not justified *until* removal was no longer reasonably foreseeable and the detention became indefinite. In *Demore*, meanwhile, the application of the constitutional avoidance canon was not justified for a reason that applies equally to this case: during the pendency of the removal proceedings, removal remains reasonably foreseeable and the detention has a definite termination point. Despite these clear standards from the Supreme Court, our court has held § 1226(c) to be invalid even when the removal proceedings remain pending, removal is reasonably foreseeable, and the detention has a definite termination point. That decision conflicts with

13

controlling precedent and ignores "the limited scope of judicial inquiry into immigration legislation." *Fiallo*, 430 U.S. at 792.[10]

I would join the Eighth Circuit in holding that the Due Process Clause does not invalidate the mandatory detention provision of § 1226(c) as long as "deportation remains a possibility." *Banyee*, 115 F.4th at 933. In doing so, I would adhere to the Supreme Court's instruction that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Because "detention under § 1226(c) has a definite termination point" at "the conclusion of removal proceedings," removal remains a possibility throughout a § 1226(c) detention. *Jennings*, 583 U.S. at 304 (internal quotation marks omitted). The applicable precedents therefore yield "a bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still '*pending*.'" *Banyee*, 115 F.4th at 933 (quoting *Demore*, 538 U.S. at 527).

In these cases, the removal proceedings remain pending; there is no indication that those proceedings are a sham or that the government is otherwise unlikely to effectuate the removals at the

---

[10] *See Fiallo*, 430 U.S. at 792 ("Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'") (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)); *Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. In the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process. But that the formulation of these policies is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government.") (citations omitted).

reasonably foreseeable conclusion of those proceedings. Under these circumstances, the Constitution requires no exception to the requirement of mandatory detention that Congress enacted.

## II

The panel opinion justified its invalidation of § 1226(c) with its conclusion that a criminal alien—who is concededly removable based on his criminal history—has a "significant liberty interest … in being free from imprisonment" while the alien seeks relief from removal in immigration proceedings. *Black*, 103 F.4th at 151. Unlike *Zadvydas*—in which removal was improbable and the detention was indefinite—the general interest in being free from imprisonment is not implicated in these cases. "[A]n alien detained under § 1226(c) 'has the keys in his pocket' and can 'end his detention immediately' by 'withdrawing his defense and returning to his native land.'" *Banyee*, 115 F.4th at 933 (alterations omitted) (quoting *Parra*, 172 F.3d at 958). In fact, "the Government is happy to release him—provided the release occurs in the cabin of a plane bound" for his home country. *DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020).

The due process analysis "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). When we engage in interest balancing, the "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of *the precise nature* of the government function involved as well as of the private interest that has been affected by governmental action." *Goldberg v. Kelly*, 397 U.S. 254, 263 (1970) (emphasis added) (quoting *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961)).

To be precise about these cases, "[t]he private interest here is not liberty in the abstract, but liberty *in the United States* by someone

15

no longer entitled to remain in this country but eligible to live at liberty in his native land." *Parra*, 172 F.3d at 958 (emphasis in original). Under what law can the aliens in these cases make a "substantive claim of entitlement" to release into the United States? *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976). Both Black and G.M. are removable based on their criminal conduct. From the start of his removal proceedings, Black has conceded that he is removable pursuant to § 1227(a)(2)(E)(i) because he was convicted of a crime of domestic violence, stalking, child abuse, child neglect, or child abandonment. *See* Black App'x 157 (¶ 17). And there is no question that he is also removable pursuant to § 1227(a)(2)(A)(iii) because he committed an aggravated felony. *See id.* at 155 (¶ 11). At one time, G.M. made a frivolous argument that the government could not prove he was removable because the records of his conviction for an aggravated felony were "unreliable" and contained "formatting and spelling errors." G.M. App'x 177-79. An IJ rejected that argument in 2020, *see id*. at 177, and the BIA agreed that the government had proven removability in a decision it issued on December 15, 2021, *see* Motion to Supplement the Record on Appeal, Exhibit A at 2, *G.M. v. Decker*, No. 22-70 (2d Cir. Apr. 25, 2022), ECF No. 33-3. There is no question that G.M is removable pursuant to § 1227(a)(2)(A)(iii) because he was convicted of an aggravated felony.

"When an alien is removable, he or she has no right under the basic immigration laws to remain in this country." *Zadvydas*, 533 U.S. at 720 (Kennedy, J., dissenting). Black and G.M. continue to pursue forms of relief from removal, meaning they hope to convince the government to decline to exercise its legal right to remove them from the United States. Those sorts of claims cannot establish an entitlement to be released into the United States.

16

Black, for example, has applied for asylum. But even assuming that he is eligible for asylum—which he does not appear to be, *see* 8 U.S.C. § 1158(b)(2)(A)(ii)—asylum is always "a discretionary form of relief" that the government may choose to deny, *Hong Fei Gao v. Sessions*, 891 F.3d 67, 75 (2d Cir. 2018) (quoting *Delgado v. Mukasey*, 508 F.3d 702, 705 (2d Cir. 2007)); *see* 8 U.S.C. § 1158(b)(1). Every asylum applicant "has the burden of proof to establish" that he or she "merits a favorable exercise of discretion." 8 U.S.C. § 1229a(c)(4)(A)(ii). An alien "does not have a liberty or property interest in a discretionary grant of asylum." *Yuen Jin v. Mukasey*, 538 F.3d 143, 157 (2d Cir. 2008). The Due Process Clause does not protect such an interest because "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

The only relief that G.M. continues to seek is deferral of removal under the CAT. *See* G.M. Supp. App'x 2-3. We have previously explained that neither the CAT nor the United Nations Protocol Relating to the Status of Refugees creates a private entitlement. Because these are not "self-executing treaties," the CAT and the Protocol "do not create private rights that petitioners can enforce in this court beyond those contained in their implementing statutes and regulations (i.e., the INA)." *Yuen Jin*, 538 F.3d at 159. The CAT certainly cannot serve as a basis for *invalidating* a statute that Congress has enacted. Moreover, "even if the treaties were self-executing, 'there is a strong presumption against inferring individual rights from international treaties.'" *Id.* (quoting *United States v. De La Pava*, 268 F.3d 157, 164 (2d Cir. 2001)). "[I]nternational agreements, even those directly benefiting private persons, generally do not create private rights." *Medellín v. Texas*, 552 U.S. 491, 506 n.3 (2008) (quoting

2 Restatement (Third) of Foreign Relations Law of the United States § 907 cmt. a (1986)).

Black has additionally sought withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(A). With respect to this statutory provision, "we have suggested in dicta that an alien's interest 'in not being returned to a country where he fears persecution may well enjoy some due process protection not available to an alien claiming only admission.'" *Yuen Jin*, 538 F.3d at 157 (alteration omitted) (quoting *Yiu Sing Chun v. Sava*, 708 F.2d 869, 877 (2d Cir. 1983)). But even if Black had a protectable interest in statutory withholding relief, that interest has not been affected by his detention. We must identify "the precise nature" of "the private interest that has been affected by governmental action." *Goldberg*, 397 U.S. at 263. If the private interest is Black's purported statutory entitlement to avoid being returned to Jamaica, then no governmental action has affected that interest because Black has not been returned to Jamaica. That private interest certainly has not been denied without due process. The whole reason for this appeal is that the government has afforded Black so much process to contest his return to Jamaica that his removal proceedings have continued for a lengthy amount of time. In his habeas case, Black is not contesting his return to Jamaica but "claiming only admission" to the United States, and he has no entitlement to such admission. *Yuen Jin*, 538 F.3d at 157.

A right not to be removed to a particular country—whether the right is asserted under § 1231(b)(3)(A) or under the CAT—does not establish an entitlement to be released into the United States. In their habeas cases, Black and G.M. assert an entitlement to be released into the United States pending their removal proceedings. In their removal proceedings, however, Black and G.M. are pursuing possible entitlements only to avoid removal to particular foreign countries.

18

Thus, to the extent that Black and G.M. have a possible entitlement, it has not been denied. To the extent that Black and G.M. have been denied release into the United States, they have identified no entitlement to such release.

Even if we defined the interest in release at so high a level of abstraction as to obscure the distinction between domestic and foreign release, that interest still would not entitle aliens such as Black and G.M.—who are concededly removable—to additional procedures under the *Mathews* factors. As Judge Easterbrook has explained:

> [T]he probability of error is zero when the alien *concedes* all elements that require removal (as [the aliens here have] done); and the public interest is substantial given the high flight rate of those released on bail. The Supreme Court held in *United States v. Salerno*, 481 U.S. 739 (1987), that pretrial detention in criminal prosecutions (a parallel to pre-removal detention) comports with the Constitution even though the private interest is greater, the likelihood of error must be deemed significant given the prosecutor's high burden at a criminal trial, and the public interest is less (for the skip rate on bond in criminal prosecutions is well under 90%). Given the sweeping powers Congress possesses to prescribe the treatment of aliens, *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977), the constitutionality of § 1226(c) is ordained.

*Parra*, 172 F.3d at 958. I would hold that removable aliens lack a protected liberty interest in being released into the United States and that, for the reasons Judge Easterbrook identified, the *Mathews* factors would in any event deny such aliens the right to a bond hearing when Congress has prescribed their mandatory detention.

19

* * *

The panel opinion conflicts with the decisions of the Supreme Court in *Jennings*, *Demore*, and *Zadvydas*; entrenches a direct circuit split with the Eighth Circuit; and unjustifiably renders an act of Congress—which continues to apply to immigration proceedings in Minnesota and other states—invalid in New York, Connecticut, and Vermont. Our court should rehear these cases *en banc*. *See* Fed. R. App. P. 40(b)(2). I dissent from the order of the court declining to do so.

CHIN and CARNEY, *Senior Circuit Judges*, in support of the denial of rehearing en banc:

As members of the two-judge panel that decided the case, we fully support the Court's denial of the petition for rehearing en banc.[1] The panel decision was correct, *see Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) ("*Black*"), and the criteria for en banc rehearing have not been met. Fed. R. App. P. 40(b)(2). We write to address the arguments made by our two colleagues who have filed dissents from the Court's denial of en banc review.

The panel concluded that the detentions of two noncitizens under 8 U.S.C. § 1226(c) for a prolonged period without any bond hearing violated the noncitizens' Fifth Amendment due process rights.[2] In so holding, we affirmed the ruling of one district court and reversed the ruling of another. A district court granted habeas relief to Black, ordering that a bond hearing be conducted after he had been detained for almost 8 months. Black prevailed at that bond hearing, posted bond, and was released. The government appealed. Another district court denied habeas relief to G.M., who by then had been detained without a bond hearing for almost 14 months, and G.M. appealed. (He was later released, after 21

---

[1] As senior judges, we have no vote on whether to rehear a case en banc. *See* 28 U.S.C. § 46(c); Fed. R. App. P. 40(c). Pursuant to this Court's protocols, however, senior judges who were members of the panel deciding the case that is subject to the en banc petition may file a statement expressing their views where, as here, an active judge has filed a dissent from the denial of a petition for rehearing en banc.

[2] Judge Rosemary Pooler was a member of the panel and joined Judges Chin and Carney in voting for the result reflected in the published opinion. She died, however, before the opinion was issued.

months' detention, in circumstances related to the Covid pandemic. He never received a bond hearing.)

On appeal, we applied the three-factor balancing test provided by *Mathews v. Eldridge*, 424 U.S. 319 (1976), to examine Black's and G.M.'s individual circumstances. Based on that exercise, we held in each case that detention had become unreasonably prolonged and that due process therefore entitled each to a bond hearing.[3] We further concluded, again guided by *Mathews*, that at such a bond hearing, due process demanded that the government bear the burden to justify, by clear and convincing evidence, their continued detentions. In so holding, we joined the Third Circuit, the only other Circuit to address what bond hearing procedures are constitutionally required to remedy unreasonably prolonged detention under § 1226(c). *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020).

We write separately to respond in more detail to several arguments raised now by our dissenting colleagues.

First, we address Judge Menashi's accusation that the panel "invalidated" § 1226(c). Menashi Dissent at 2. He is incorrect. Far from "invalidating" § 1226(c), *id.*, and upending its "policy of mandatory detention," *id.* at 12, the *Black* panel held that, as a remedy for an as-applied challenge to unreasonably prolonged detention, a district court properly ordered the government to justify an

---

[3] The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

individual petitioner's *continued § 1226(c) detention* at a bond hearing. Judge Menashi's misreading of what the panel held unfortunately pervades the whole of his dissent. Further, and importantly, under Judge Menashi's interpretation of the law, no individual could *ever* challenge his or her detention under § 1226(c), even if the detention became indefinite or, worse, permanent. Absent a court's imposition of a life sentence for a criminal conviction, due process does not permit such a result.

Next, Judge Nardini takes issue with our conclusion, which was guided by *Mathews*, that at such a bond hearing, due process demands that the government bear the burden to justify by clear and convincing evidence detainees' continued detentions.[4] Judge Nardini urges that, where detention under § 1226(c) is "unreasonably prolonged" such that due process entitles a detainee to a remedial bond hearing, the detainee must bear the burden of proof to justify release by a preponderance of the evidence. Yet, his arguments rely primarily on caselaw analyzing a *different* provision—8 U.S.C. § 1226(a)—which, as we explain further below, creates a different detention regime. Judge Nardini has identified no case (and we are aware of none) in which any Circuit has determined that a bond hearing using the burden allocation he proposes was deemed an adequate remedy for unreasonably prolonged detention under either § 1226(a) or § 1226(c). And meanwhile, the Third Circuit's holding in *German Santos* is wholly in accord with our ruling. On our reading, rehearing this case en banc and deciding as Judge Nardini suggests would not help to resolve any Circuit split; rather, to

---

[4] As we explained in *Black*, the panel reached the issue of the burden allocation at the hearing ordered for Black only. *See Black*, 103 F.4th at 155 & n.27.

adopt his position would be to create a Circuit split.

To address the dissents' arguments, we discuss below the statutory scheme governing immigration detention under § 1226; the Supreme Court's guidance on these topics; our Court's approach to resolving the questions left open by the Supreme Court; and Judge Menashi's misinterpretation of Supreme Court precedent and of our panel's holding. We further discuss other Circuits' caselaw concerning § 1226(a) and § 1226(c), and explain why, contrary to Judge Nardini's misapprehensions, there is no Circuit split that reconsidering *Black* would help resolve.

## I.  Applicable law

### A. Statutory background

Section 1226 contains two relevant subsections, (a) and (c), which establish different regimes for the government's detention of noncitizens whom it charges with removability. Section 1226(a) authorizes the government to detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As the Supreme Court explained in *Jennings v. Rodriguez*, "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien" pending a removal decision, and "'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)). As discussed further in Section IV.A. below, § 1226(a) detainees are afforded multiple opportunities to challenge their detention: at the point of arrest, at multiple bond hearings, and on appeal. Notably, § 1226(a) detainees receive an

4

initial bond hearing when first detained, and, under BIA precedent, they bear the burden of justifying their release at that initial hearing.

In contrast, § 1226(c) provides that the government "shall take into custody" noncitizens whom it charges with removability based on certain specific prior criminal convictions and makes no provision at all for a bond hearing, at any point.[5] Section 1226(c) detainees have no express statutory or regulatory rights at all to a bond hearing at any point in their detention. They have only the hearing that we have now ordered in *Black*, and that is available to them only after a judge has found, based on their individual circumstances, that their detention has become unreasonably prolonged.

### B. The Supreme Court's guidance

It is well settled that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As the Supreme Court has recently reiterated, "'the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507

---

[5] Following a January 2025 amendment, § 1226(c) mandatory detention covers any noncitizen who, *inter alia*, "is *charged* with, is *arrested* for, is convicted of, *admits having committed*, or *admits committing acts* which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). The amended § 1226(c) also subjects to mandatory detention those who are charged with inadmissibility on the ground that they are present in the United States "without being admitted or paroled," "misrepresent[ed] a material fact" as part of an application for admission or for a visa or benefit, or lack the necessary documentation at the time they apply for admission. 8 U.S.C. § 1182(a)(6)(A), (6)(C), (7); *id*. § 1226(c)(1)(E)(i).

U.S. 292, 306 (1993)). The Supreme Court has also made clear that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Immigration detention, like all forms of civil detention, must be "nonpunitive in purpose and effect." *Id*. It also must be necessary to prevent against a risk of flight or danger to the community. *See id*. Due process thus requires "adequate procedural protections" to ensure that a noncitizen's immigration detention remains necessary to serve a permissible government purpose. *Id*. And in the context of preventive civil detention, the most fundamental due process protection is an individualized hearing, before a neutral decisionmaker, to justify government detention. *See, e.g., Schall v. Martin*, 467 U.S. 253, 270 (1984); *United States v. Salerno*, 481 U.S. 739, 750 (1987); *Kansas v. Hendricks*, 521 U.S. 346, 357–58 (1997).

Section 1226(c) is an outlier among comparable civil detention regimes. While other types of civil detention generally require a bond hearing near the outset of detention, *see, e.g., Salerno*, 481 U.S. at 750, § 1226(c) makes no express provision for a bond hearing.

The Supreme Court has never directly addressed whether prolonged detention without a bond hearing will *at some point* violate a detainee's due process rights, nor what bond procedures would be constitutionally required to remedy unreasonably prolonged detention under § 1226(a) or § 1226(c). The groundwork, however, was laid in 2001, in *Zadvydas v. Davis*, 533 U.S. 678 (2001). There, the Supreme Court addressed whether a different detention statute—8

U.S.C. § 1231(a)(6)—authorized indefinite detention.[6] Resolving only the statutory challenge, the *Zadvydas* Court determined that the statute would raise "serious constitutional concerns" if it did permit indefinite detention. 533 U.S. at 682. The Court also held that the government's existing custody-review processes were deficient because they placed on the detainee "the burden of proving he is not dangerous." *Id.* at 692. Accordingly, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation" of six months, when, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release the noncitizen. *Id.* at 682, 701.

Two years later, in *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court upheld the constitutionality of § 1226(c) against a facial challenge, resting on the purportedly *"brief* period necessary for [§ 1226(c) detainees'] removal proceedings." *Id.* at 513 (emphasis added). This was a facial challenge because the petitioner was not challenging the statute based on his individual circumstances, but instead, based on the statute's lack of provision for an initial bond hearing. *See id.* at 516–17 ("But respondent does not challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release. Rather, respondent challenges the statutory framework that permits his detention without bail."). Relying on statistics provided by the government, the Court

---

[6] Section 1231(a)(6) provides that certain noncitizens who are ordered removed "may be detained beyond the [90-day] removal period and, if released, shall be subject to [certain] terms of supervision." 8 U.S.C. § 1231(a)(6).

wrote that the "detention at stake . . . lasts roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. The Supreme Court assumed that the circumstances of the habeas petitioner, Hyung Joon Kim, who had been detained for six months, were not typical. *See id.* at 530–31.[7]

In 2018, the Supreme Court in *Jennings v. Rodriguez* decided that, as a matter of statutory interpretation, neither § 1226(a) nor § 1226(c) contains implicit six-month limitations on detention absent a bond hearing. 583 U.S. 281, 296, 303–04 (2018). *Jennings* also ruled that § 1226(a), by its own terms, does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings. The *Jennings* majority took no position on whether the Due Process Clause places any procedural limit on detention, reserving the constitutional claims for remand. *See id.* at 312.

In sum, *Zadvydas*, *Demore*, and *Jennings* left open the question whether prolonged detention without a bond hearing will *at some point* violate a detainee's due process rights.

---

[7] As we explain in the panel opinion, *see Black*, 103 F.4th at 144 n.14, the government later disclosed that the statistics on which the Supreme Court relied in *Demore* contained several significant errors. Letter from Ian Heath Gershengorn, Acting Solicitor Gen., to Scott S. Harris, Clerk, Supreme Ct. of the U.S. at 2 (Aug. 26, 2016), *available at* https://on.wsj.com/2sUWIGk [https://perma.cc/U3KR-C56W]. Contrary to the *Demore* Court's understanding that § 1226(c) detention averaged 5 months when detainees appealed to the BIA, the government clarified that the actual average was over 12 months. Gershengorn Letter at 3. Kim's 6-month detention was not, therefore, an outlier, but rather fell within the 80% of cases in which § 1226(c) detainees who appealed to the BIA were detained for at least 6 months. And even the updated data in the Gershengorn Letter contained acknowledged weaknesses growing from its inadequate definition of case "completions." *See id.* at 2–3.

### C. Our Court's approach

In *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), we addressed the government's discretionary detention authority under § 1226(a). Three and one-half months after Velasco Lopez was first detained under § 1226(a), he had an initial bond hearing. There, he failed to carry his burden of proving that he was neither a flight risk nor dangerous. *See id.* at 847, 849. He had another bond hearing five months after the first, again failing to meet the burden of proof. *See id.* at 847. After fourteen months in detention, Velasco Lopez filed a habeas petition alleging a violation of due process. The district court granted his petition and ordered a new hearing at which the government was required to justify his continued incarceration by presenting clear and convincing evidence that he was either a flight risk or a danger to the community. *See id.* at 847–48. At the hearing, the immigration judge ("IJ") concluded that the government failed to carry its burden, and ordered Velasco Lopez released on a $10,000 bond, which he posted.

On appeal, this Court held that "Velasco Lopez's prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process." *Id.* at 855. We went on to rule that, to address this due process violation, the district court properly ordered a new hearing at which the government bore the burden to show dangerousness and flight risk by clear and convincing evidence. *Id.* at 855–57. In so ruling, we did not take issue with the burden allocation at the *initial*, statutorily required § 1226(a) bond hearings—where noncitizens bear the burden of proof—but explained that "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may

9

have been sufficient at the moment of initial detention." *Id.* at 853 (quoting *Zadvydas*, 533 U.S. at 701). "While the Government's interest may have initially outweighed short-term deprivation of Velasco Lopez's liberty interests, that balance shifted once his imprisonment became unduly prolonged." *Id*. at 855. Our Court concluded that the clear and convincing standard was appropriate to apply, reasoning that "[t]he Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Id*. at 856 (footnote omitted).[8]

## II.    The *Black* Panel decision

In *Black*, we evaluated petitioners Black and G.M.'s due process challenges under the three *Mathews* factors and found that all three weighed in favor of allowing each petitioner a bond hearing. *First*, they had a weighty "private interest" in being free from imprisonment. *Black*, 103 F.4th at 151–52. *Second*, it was not a "risk," but a virtual certainty, that the minimal procedures under § 1226(c) had led to "unwarranted detention" for Black. *Id*. at 153. Black had led a peaceful life since his criminal conviction in March 2000, 19 years before his arrest under § 1226(c), and at the bond hearing ordered by the district court, the government could not justify his continued detention. *Id*. G.M.'s circumstances similarly "suggest[ed] a high likelihood that he was subject to an erroneous deprivation of liberty." *Id*. *Third*, while the government's legitimate interests in

---

[8] In *Velasco Lopez*, we cited, *inter alia*, *United States v. Comstock*, 560 U.S. 126 (2010), *Foucha v. Louisiana*, 504 U.S. 71 (1992), and *United States v. Salerno*, 481 U.S. 739 (1987). *See* 978 F.3d at 856. We relied on these same authorities in *Black*. *See* 103 F.4th at 157–58.

detaining certain individuals justify a relatively short-term deprivation of liberty, *see Demore*, 538 U.S. at 513, "the balance of interests shifts as the noncitizen's detention is prolonged without any particularized assessment of need," *Black*, 103 F.4th at 154. Accordingly, due process entitled Black and G.M. to individualized bond hearings once their detentions became unreasonably prolonged.

We also concluded that the district court correctly determined that, at Black's bond hearing, due process required the government to bear the burden of proof by clear and convincing evidence. We observed that "proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern. Requiring detainees like Black to prove that they are *not* a danger and *not* a flight risk—after the government has enjoyed a presumption that detention is necessary—presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged." *Id.* at 156 (internal quotation marks and citations omitted). As in *Velasco Lopez*, the clear and convincing standard was appropriate in light of the liberty interests at stake.

## III. Judge Menashi's dissent

Judge Menashi urges a far different interpretation of the Supreme Court's precedents, relying on the Eighth Circuit's recent, post-*Black* decision in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). But *Banyee* is under-reasoned and deeply flawed, and it is an outlier among the relevant decisions of our Sister Circuits.

Petitioner Banyee, a lawful permanent resident, had been detained under § 1226(c) for over twelve months when a district court granted his habeas petition challenging his prolonged detention. *Nyynkpao B. v. Garland*, No. 21-CV-

11

1817, 2022 WL 1115452, at \*3, \*6 (D. Minn. Apr. 14, 2022). The district court carefully considered the factors outlined in *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018), and ordered relief in the form of a bond hearing at which the government would bear the burden to justify continued detention. *Nyynkpao B.*, 2022 WL 1115452, at \*6. At that bond hearing, the immigration judge held that the government had not met its burden and thus ordered Banyee released on bond.

The Eighth Circuit reversed, holding that "[t]he rule has been clear for decades" (since *Demore* in 2003) that due process placed no time limit on detention under § 1226(c) without a bond hearing. *Banyee*, 115 F.4th at 931. According to the *Banyee* panel, the Supreme Court definitively foreclosed individual as-applied challenges to prolonged detention under § 1226(c), and established a "bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still pending." *Id.* at 933 (internal quotation marks omitted). The *Banyee* panel further concluded that *Zadvydas* and *Demore* "leave no room for a multi-factor 'reasonableness' test" in evaluating a § 1226(c) detention because the Supreme Court has "already done whatever balancing is necessary" in opting for its purported "bright-line rule." *Id.*[9]

*Banyee*'s claimed "bright-line rule" runs headlong, however, into the Supreme Court's actual rulings as well as the government's consistent representations to the Court in the decades since *Demore*. As discussed, *Demore*

---

[9] Banyee petitioned for rehearing en banc, which was denied by a 6-5 vote of the Eighth Circuit's active judges. *Banyee v. Bondi*, 131 F.4th 823 (8th Cir. 2025). As the dissent from the denial of rehearing en banc in that case argues, the *Banyee* panel "attributes to the Supreme Court a much broader decision that it has not rendered." *Id*. at 831 (Colloton, *J.*, dissenting from denial of rehearing en banc).

12

rejected a facial challenge to mandatory detention under § 1226(c). Yet, according

to *Banyee* and Judge Menashi, the Supreme Court went far beyond rejecting that

facial challenge to establish its "bright-line rule" and left no room for *as-applied*

challenges to prolonged detention. Menashi Dissent at 2 (quoting *Banyee*, 115

F.4th at 933). But the government did not take that position in *Demore*. It urged

instead that, although Kim's facial challenge failed (in its view), as-applied due

process challenges to prolonged detention under § 1226(c) are proper and

viable.[10]

Nor has the government adopted Judge Menashi's reading of the Supreme

Court's precedents in the decades since *Demore*. In its brief to the Supreme Court

in *Jennings*, the government explained that "[t]he proper avenue for presenting a

claim that detention under Section 1226(c) has become impermissibly prolonged

is therefore through an as-applied constitutional challenge in an individual

---

[10] Petitioners' Br., *Demore v. Kim*, 2002 WL 31016560, at \*48–\*49 ("The mandatory detention provisions of Section 1226(c) are constitutional in the ordinary case, and exceptional circumstances that present special due process concerns can be addressed on a case-by-case basis."); Transcript of Oral Argument at 56, *Demore v. Kim*, 538 U.S. 510 (2003) (No. 01-1491) (The solicitor general, in rebuttal, stating, "[I]f there's some question about an aberrational lengthy detention, that should be brought to this Court or the courts below in an as-applied challenge."). This position comports with the long-established differences between facial and as-applied challenges: "a statute, even if not void on its face, may be challenged because invalid as applied," *Whitney v. California*, 274 U.S. 357, 378 (1927) (Brandeis, *J.*, concurring), and "[a] statute may be invalid as applied to one state of facts and yet valid as applied to another," *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 289 (1921). *See also Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91 n.6, 102 (1982) (approving district court's analysis that because application of law requiring financial disclosure was invalid as applied, court need not address alleged facial invalidity of the statute); *Rice v. Norman Williams Co.*, 458 U.S. 654, 662 n.7 (1982) (mere fact that statute "might have an anticompetitive effect when applied in concrete factual situations" does not render it void on its face). "It should be elementary that a decision rejecting a facial challenge means only that the statute is constitutional in at least some of its applications." *Banyee*, 131 F.4th at 831 (Colloton, *J.,* dissenting from denial of rehearing en banc).

13

habeas corpus proceeding." Petitioners' Br., *Jennings v. Rodriguez*, 2016 WL 5404637, at \*46–47 (citation omitted); Transcript of Oral Argument at 67, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (No. 15-1204) ("[T]he position of the government is that that individual [detained for years without a bond hearing] would have an individualized as-applied challenge in a habeas proceeding[.]"). In fact, the government argued that "*Demore* provides guideposts for evaluating such [as-applied] challenge[s]," Petitioners' Br., *Jennings v. Rodriguez*, 2016 WL 5404637, at \*47, because *Demore* focused on the "*brief* period" that, as the government represented at the time, was necessary for removal proceedings, *Demore*, 538 U.S. at 513 (emphasis added). As the government explained, *Demore* counsels that the length of a detention can bear on the constitutionality of even a mandatory detention: "because longer detention imposes a greater imposition on an individual, as the passage of time increases a court may scrutinize the fit between the means and the ends more closely." Petitioners' Br., *Jennings v. Rodriguez*, 2016 WL 5404637, at \*47.[11]

For the same reasons, the government in *Banyee* specifically declined to urge the rule adopted by the *Banyee* panel. As the government there recognized, "The Supreme Court has not yet decided whether due process might prohibit the continued application of section 1226(c) in individual extraordinary circumstances," Appellants' Br. at 20, *Banyee*, No. 22-2252 (8th Cir. Dec. 19, 2022), and "there may be cases in which continued detention without a bond hearing

---

[11] Likewise, the government conceded in *Demore* that "the duration of detention . . . is another factor bearing upon its constitutionality, because prolonged detention imposes a greater burden upon the [noncitizen.]" Petitioners' Br., *Demore v. Kim*, 2002 WL 31016560, at \*48 (citing *Zadvydas*, 533 U.S. at 688–701).

under section 1226(c) may be unconstitutional," Appellants' Reply Br. at 6, *Banyee*, No. 22-2252 (8th Cir. June 14, 2022). The government contended, however, that Banyee's claim failed simply because he "has not pointed to any extraordinary circumstances that would warrant such a conclusion here." *Id*.[12]

In addition to misapprehending *Demore*'s rejection of a facial challenge as foreclosing as-applied challenges, Judge Menashi makes the reverse mistake regarding the *Black* panel opinion, claiming that *Black* "invalidated" § 1226(c) altogether by inviting as-applied challenges in the form of bond hearings. Menashi Dissent at 2, 12. One need only review the panel opinion to see that it did not "invalidate" § 1226(c)'s mandatory detention scheme.[13] To the contrary, it held that § 1226(c) had been used unconstitutionally in two, individual cases of excessively prolonged detention, leaving untouched the vast majority of § 1226(c)'s lawful applications. Nothing about this limited holding constitutes an "invalidation" of anything.

---

[12] That *Banyee* was wrongly decided—and that Judge Menashi's reliance on *Banyee* is therefore misguided—is further clarified by the government's subsequent efforts to cabin *Banyee*'s analysis. In its opposition to the petition for rehearing en banc in *Banyee*, the government argued that *Banyee* "should not be read as ruling out as-applied challenges to section 1226(c) detention or suggesting that due process imposes no constraints on prolonged mandatory detention." Opp. to Petition for Rehearing En Banc at 10, *Banyee*, No. 22-2252 (8th Cir. Jan. 23, 2025). And in its petition for rehearing en banc here, the government reiterated that *Demore* and *Jennings* recognized the need for individualized, case-by-case consideration of whether a person's prolonged detention is necessary. *See* Petition for Rehearing En Banc at 11, *Black*, No. 20-3224 (2d Cir. Nov. 20, 2024).

[13] No party appears to be under the same misapprehension as Judge Menashi that *Black* could be read as invalidating § 1226(c). The government did not make any such argument in its request for en banc review. *See* Petition for Rehearing En Banc, *Black*, No. 20-3224 (2d Cir. Nov. 20, 2024). Nor does Judge Nardini, in his dissent from rehearing en banc, challenge the panel's opinion as a wholesale invalidation of the statute.

Moreover, the Supreme Court has long applied the balancing test in *Mathews*, 424 U.S. at 335, as a framework for determining whether individuals—including noncitizens—in government custody have received constitutionally-adequate process. *See, e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (observing that *Mathews* governs evaluation of noncitizen's claim that she was denied due process at exclusion hearing); *cf. Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004) (applying *Mathews* to assess whether due process entitled enemy combatant to evidentiary hearing). Neither *Zadvydas* nor *Demore* precludes the balancing of interests that was recognized as necessary in *Black*.

Judge Menashi further contends that *Zadvydas* supports his view that prolonged detention without a bond hearing poses no due process concerns as long as "removal is reasonably foreseeable, and the detention has a definite termination point." Menashi Dissent at 13. But *Zadvydas*'s focus on the foreseeability of removal—and its limiting construction of § 1231(a)(6) as authorizing detention only when removal is reasonably foreseeable—does not address or settle the due process concerns raised by prolonged detention under § 1226(c) of noncitizens who are awaiting determinations on their claims for relief, which may take years to resolve. Indeed, whether removal is foreseeable and whether detention has a definite termination point are issues that could be explored at a due process hearing.

Even more troubling is the fact that Judge Menashi's view would strip the judiciary of all power to verify that detention does in fact have a valid rationale and a "definite termination point." While § 1226(c) mandates detention, it is still a civil statute and therefore can only do so to prevent flight or protect the

community. *See Zadvydas*, 533 U.S. at 690. Statutory authorization or not, the Constitution demands that there be a point when detention has gone on so long that courts can no longer blindly trust that it remains justified. Judge Menashi's conviction that no such point exists should worry all who recognize, as the Supreme Court long has, that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha*, 504 U.S. at 80.

Furthermore, if Judge Menashi were correct that the pendency of removal proceedings and the prospect of a future deportation alone were enough to legitimize indefinitely prolonged detention without a hearing, that interpretation would make nonsensical the Supreme Court's focus on "the brief period" for which it approved the extraordinary measure of mandatory preventative detention under § 1226(c). *Demore*, 538 U.S. at 513. Similarly, if the Supreme Court had already decided that mandatory detention under § 1226(c) is always constitutional regardless of duration or circumstances, "the *Jennings* Court would have had no reason to remand to the Ninth Circuit 'to consider . . . in the first instance' the detainees' argument that '[a]bsent . . . a bond-hearing requirement, . . . [section 1226(c)] would violate the Due Process Clause,'" *Black*, 103 F.4th at 149 (quoting *Jennings*, 583 U.S. at 291, 312).

Although we agree with Judge Menashi that individuals have no "liberty or property interest in a discretionary grant of asylum," *Yuen Jin v. Mukasey*, 538 F.3d 143, 157 (2d Cir. 2008), they do have a due process interest in the procedures by which their asylum claims are adjudicated. *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (protected interest in procedural fairness for asylum claims);

*Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (same); *Yuen Jin*, 538 F.3d at 161 n.1 (Sack, *J.*, concurring in part) ("Although asylum is a discretionary form of relief, and the Due Process Clause does not protect benefits that government officials may grant or deny in their discretion, every asylum applicant is nonetheless entitled to due process in establishing her eligibility for that form of relief." (internal quotation marks and citations omitted)). Withholding of removal may not entitle a petitioner to admission to the United States, but the Constitution entitles all individuals to freedom from arbitrary bodily restraint while they exercise their legal rights in this country. Thus, while the Government may be "happy to release [a detainee] . . . in the cabin of a plane bound for his home country," Menashi Dissent at 15 (internal quotation marks omitted), the Government cannot use prolonged detention to force a detainee to relinquish rights that he might otherwise exercise.

Judge Menashi further faults the *Black* panel for "entrench[ing] a split with the Eighth Circuit." Menashi Dissent at 1. But our decision in *Black* was issued *before Banyee*. It brought our Court into alignment with the only other post-*Jennings* decision to address what procedures due process demands following unreasonably prolonged detention without a bond hearing under § 1226(c)—the Third Circuit's decision in *German Santos*—a decision that Judge Menashi does not mention. Meanwhile, *Banyee* failed to meaningfully address its split with our Court and others, dismissing our constitutional holding in *Black* without analysis, in a footnote.

Finally, it is error to conclude, as Judge Menashi does, that prolonged detention under § 1226(c) does not implicate the petitioners' "general interest" in

18

freedom from imprisonment. Menashi Dissent at 15. In *Zadvydas*, the Supreme Court affirmed that, *even after the conclusion of removal proceedings*, removable noncitizens in the United States have due-process rights and possess a liberty interest in freedom from imprisonment. *See* 533 U.S. at 690–96. In fact, rejecting an argument similar to that raised by Judge Menashi, the Court declined to characterize that liberty interest at issue as the "right to release" into the United States. *Id.* at 696 (internal quotation marks omitted). And although Judge Menashi does not at all engage with *Velasco Lopez*, that precedent clearly recognizes that prolonged detention pending removal proceedings without a bond hearing implicates noncitizens' liberty interest in being free from imprisonment. *See* 978 F.3d at 850–52.

## IV. Judge Nardini's dissent

Judge Nardini's dissent does not speak to our fundamental holdings that the *Mathews* framework applies to § 1226(c) length-of-detention challenges and that due process may entitle a § 1226(c) detainee to a bond hearing once his or her particular detention becomes "unreasonably prolonged." Rather, his dissent focuses on our conclusion about the burden allocation and evidentiary standard to apply at such a bond hearing. He urges that, where detention under § 1226(c) is "unreasonably prolonged" such that due process entitles a detainee to a remedial bond hearing, the detainee must bear the burden of proof to justify release by a preponderance of the evidence. Yet, Judge Nardini's arguments rely primarily on inapt caselaw analyzing § 1226(a).

At bottom, Judge Nardini fails to acknowledge the significance of differences between the two detention regimes set out separately in § 1226(a) and

19

§ 1226(c); he misinterprets *Velasco Lopez*; and he misconstrues other Circuits'

opinions to find a Circuit split where there is none.

### A. Individuals detained under § 1226(a) and § 1226(c) face markedly different barriers to release.

Judge Nardini argues that, in his view, it is "profoundly wrong to make it

no more difficult to obtain release at a bond hearing for § 1226(c) detainees than

for § 1226(a) detainees." Nardini Dissent at 29. In our view, there is at best limited

equivalence between the respective barriers faced by § 1226(a) and § 1226(c)

detainees.

### 1. § 1226(a)

The opportunities available for § 1226(a) detainees to challenge their

detention and seek release are several:

- When a person is apprehended under the authority of § 1226(a), an Immigration and Customs Enforcement ("ICE") officer makes an initial determination about whether to retain that person in custody. *See* 8 C.F.R. § 236.1(c)(8).
- If the officer chooses to continue the person's detention, the person may seek review of that decision at a bond hearing before an IJ. *See id.* § 236.1(d)(1).
- If the IJ decides to continue detention, the person may appeal to the BIA. *See id.* § 236.1(d)(3).
- If the person stays in detention, he may also request additional bond hearings whenever he experiences a material change in circumstances. *See id.* § 1003.19(e).
- He may also appeal the outcome of any of those bond hearings to the BIA. *See id.* § 1003.19(f).

Section 1226(a) and its accompanying regulations are silent as to what

burden of proof applies at a bond hearing before an immigration judge and who

bears that burden. For many decades, the BIA interpreted that silence as creating a presumption in favor of a noncitizen's liberty pending removal proceedings. *See Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976). In the late 1990s, however, the INS adopted regulations establishing a presumption of detention in the arresting officer's initial custody determination for § 1226(a) detainees. *See* 8 C.F.R. § 236.1(c)(2)–(8). Under those regulations, a noncitizen held under § 1226(a) and seeking release bears the burden of "demonstrat[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* § 236.1(c)(8).

Although by its terms that regulation applies only to the initial custody determination by the arresting officer, the BIA soon adopted that standard for § 1226(a) *bond hearings before an IJ* as well, reversing the *Patel* rule. *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999); *see also Matter of Guerra*, 24 I. & N. Dec. 38, 40 (B.I.A. 2006). Accordingly, the BIA now holds that a noncitizen detained under § 1226(a) must demonstrate "to the satisfaction of the Immigration Judge that he or she merits release on bond," *Matter of Guerra*, 24 I. & N. Dec. at 40, "even though section [1226(a)] does not explicitly contain such a requirement," *Matter of Adeniji*, 22 I. & N. Dec. at 1113. To meet that standard, the noncitizen must show that he or she is neither a danger to the community nor a flight risk. *See, e.g., Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (B.I.A. 2020).

As we held in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), however, once a § 1226(a) detainee's period of detention after the initial or most recent bond hearing becomes unreasonably prolonged, due process demands an *additional* bond hearing. And at that hearing, we held, the *government* bears the

21

burden of justifying, by clear and convincing evidence, the detainee's continued detention. Accordingly, regulation, statute, and case law have produced tailored burden-allocation protocols for § 1226(a) detainees that depend on whether the bond hearing is provided (i) *as a matter of course* (in which case the noncitizen bears the burden), or (ii) *as a remedy* for unreasonably prolonged detention (in which case the government bears the burden).

### 2. § 1226(c)

Section 1226(c), on the other hand, carves out a class of noncitizens for whom detention is mandatory. 8 U.S.C. § 1226(c). As Judge Nardini stresses, these individuals include those who have been convicted of certain serious crimes or engaged in certain terrorist activities.[14] But, as Justice Breyer observed, § 1226(c) detainees also include those who "may have been convicted of only minor crimes—for example, minor drug offenses, or crimes of 'moral turpitude' such as illegally downloading music or possessing stolen bus transfers; and they sometimes may be innocent spouses or children of a suspect person." *Nielsen v. Preap*, 586 U.S. 392, 430 (2019) (Breyer, *J.*, dissenting). The statute also makes no mention of the recency of a qualifying conviction or offense or of the date of a person's completion of a sentence for the qualifying crime.

In stark contrast to § 1226(a), and the five bond-related opportunities listed above, § 1226(c) by its terms establishes no express entitlement to a bond hearing

---

[14] For instance, § 1226(c) provides for detention of noncitizens who have "engaged in a terrorist activity," who are "representative[s]" of a "terrorist organization" or "a political, social, or other group that endorses or espouses terrorist activity," and those whom the government "has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity." 8 U.S.C. §§ 1226(c)(1)(D), 1182(a)(3)(B).

*at any point*.[15] Section 1226(c) detainees have only the hearing that we have now ordered in *Black*, and that is available to them only after a judge has found that their detention has become unreasonably prolonged.[16] And, after our panel decision, § 1226(c) was amended to cover additional categories of noncitizens, including those who have no criminal convictions but have been arrested or charged with certain offenses, including shoplifting, further placing individuals at risk. Within the *Mathews* balancing framework, then, § 1226(c) comes with a significantly higher risk of an erroneous deprivation of rights than § 1226(a).

Glossing over these differences, Judge Nardini would have us hold that the proper burden allocation for a § 1226(c) bond hearing ordered as a *remedy* for unreasonably prolonged detention is the same as that for a detainee at an *initial* § 1226(a) bond hearing: that the noncitizen must demonstrate entitlement to release by a preponderance of the evidence. In support of his position, Judge Nardini points to Third, Fourth, and Ninth Circuit decisions analyzing due process challenges to § 1226(a)—not § 1226(c)—detentions. *See* Nardini Dissent at

---

[15] The only procedural protection in place is the BIA-established *Joseph* hearing, at which noncitizens can contest whether they in fact committed an offense that meets the statutory criteria for § 1226(c) detention. *See Matter of Joseph*, 22 I. & N. Dec. 799 (B.I.A. 1999).

[16] In addition, ICE may "release" a person detained pursuant to § 1226(c) if necessary for witness protection purposes. 8 U.S.C. § 1226(c)(2). As we explained in *Black*, "We read section 1226(c)(2) . . . as having 'nothing to do with bail.'" *Black*, 103 F.4th at 157 (quoting *Jennings*, 583 U.S. at 351 (Breyer, J., dissenting)). "Rather, it concerns 'a special program, the Witness Protection Program, set forth in 18 U.S.C. § 3521,' in which the government would usually be required to detain the noncitizen based on a presumption of dangerousness and flight risk." *Id*. (quoting *Jennings*, 583 U.S. at 351 (Breyer, J., dissenting)).

23.[17] Moreover, in those § 1226(a) cases, the noncitizens had not shown any underlying constitutional violation in their detentions. So it should come as no surprise that those courts declined to shift the burden of proof to the government as a remedy for due process violations that were not present.

Judge Nardini cites to no case in which any Circuit has found that detention under either § 1226(a) or § 1226(c) was unreasonably prolonged and then *declined* to provide the precise bond hearing and burden allocation remedy ordered in *Velasco Lopez* and *Black*. He has identified no case (and we are aware of none) in which any Circuit has determined that a bond hearing using the burden allocation he proposes was deemed an adequate remedy for unreasonably prolonged detention under *either* § 1226(a) or § 1226(c). And meanwhile, the Third Circuit's holding in *German Santos* is wholly in accord with the panel's ruling. On our reading, rehearing this case en banc and deciding as Judge Nardini suggests would not help to resolve any Circuit split; rather, to adopt his position would be to create a Circuit split.

**B.  *Black* and *Velasco Lopez* refute Judge Nardini's arguments.**

In the panel decision, we considered arguments akin to those now raised by Judge Nardini and rejected them. The government highlighted that *Velasco Lopez* required the government to bear the burden of proof at Velasco Lopez's *third* bond hearing under § 1226(a), not his *initial* bond hearing. Therefore, the

---

[17] Judge Nardini relies principally on *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018), *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), and *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). We discuss these cases in greater depth below.

government argued, § 1226(c) detainees should have to bear the burden of proof at their *first* bond hearing as well.

We rejected this argument as "rooted neither in the text of § 1226 nor in our reasoning in *Velasco Lopez*." 103 F.4th at 157. We explained:

> Both sections 1226(a) and (c) aim to prevent flight and danger to the community. Once those detentions have been unconstitutionally prolonged, the due process analysis adopted in *Velasco Lopez* applies with equal force to both situations. Accepting the government's argument would lead to an asymmetrical, puzzling result: section 1226(a) detainees like Velasco Lopez, who had already received (and did not prevail at) an initial bond hearing, would at future bond hearings be entitled to shift the burden to the government to prove the need for continued detention; section 1226(c) detainees like Black, who never had a similar opportunity to show at an initial hearing that he should be released, would bear the burden of proof.

*Id*. Accordingly, once detention under *either* § 1226(a) or § 1226(c) has become unreasonably prolonged in violation of the Fifth Amendment, due process requires an individualized bond hearing by an IJ at which the government bears the burden to justify continued detention by clear and convincing evidence.

Judge Nardini claims that *Velasco Lopez* placed significant weight on the fact that, unlike § 1226(c) detainees, those detained under "§ 1226(a) . . . include individuals with no criminal record."[18] Nardini Dissent at 13 (quoting *Velasco Lopez*, 978 F.3d at 854). He argues that, based on that distinction between

---

[18] As discussed above, even under the pre-amendment version of § 1226(c), § 1226(c) detainees included individuals without any criminal conviction. *Preap*, 586 U.S. at 430 (Breyer, *J.*, dissenting).

§ 1226(a) and § 1226(c) detainees, *Velasco Lopez* concluded that § 1226(a) detainees "must be afforded process in addition to that provided by the ordinary bail hearing." *Id*. at 13–14 (quoting *Velasco Lopez*, 978 F.3d at 854). But Judge Nardini's quotation from *Velasco Lopez* is incomplete, as the Court made clear in *Velasco Lopez* that § 1226(a) detainees "must be afforded process in addition to that provided by the ordinary bail hearing, *just as the Supreme Court in Demore has suggested criminals subjected to prolonged detention under § 1226(c) may be entitled to further process*." *Velasco Lopez*, 978 F.3d at 854 (emphasis added).

In Judge Nardini's view, the *Black* panel fundamentally erred by extending the *Velasco Lopez* remedy to § 1226(c) detainees, because "it is the *category of noncitizens* at issue that principally matters for our due process analysis, not the timing of the hearing along the detention continuum." Nardini Dissent at 26. As his only support, he cites an observation made by a Ninth Circuit panel in *Rodriguez Diaz*, which noted that, under a now-overruled Ninth Circuit decision, "aliens who [were] detained under § 1226(c) bec[a]me detained under § 1226(a) once the BIA issue[d] a final order of removal and the alien file[d] a petition for review in federal court." *Rodriguez Diaz*, 53 F.4th at 1201. *Rodriguez Diaz* recounted that *Jennings* overruled that scheme by holding that "§§ 1226(a) and (c) apply to discrete categories of noncitizens—and *not* to different stages of a noncitizen's legal proceedings." *Id*. (internal quotation marks omitted). Judge Nardini mistakes this proposition as support for his assertion that § 1226(c) detainees whose due process rights have been violated deserve a lesser remedy than § 1226(a) detainees whose due process rights have been violated. Additionally, the *Mathews* test accounts for multiple factors, not just

26

one. While the "category of noncitizens" may affect the government's interest in detention, the fact that § 1226(c) affords those noncitizens none of the procedural protections available under § 1226(a) substantially increases the risk of error.[19] The approach the panel adopted—guaranteeing a bond hearing at which the government bears the burden of proof, but only once detention has already become unduly prolonged—strikes the right balance between these competing interests.

Judge Nardini further posits that "the panel opinion has effectively decreed that Congress has no power to set a standard that demands more of a noncitizen who has been convicted of a qualifying crime, or who poses a national security risk." Nardini Dissent at 3–4. Our response is that of the Supreme Court: "[i]n the enforcement of [immigration] policies," still "the Government must respect the procedural safeguards of due process." *Galvan v. Press*, 347 U.S. 522, 531 (1954). "It is axiomatic, moreover, that when Congress enacts a statut[e] . . . , basic procedural due process protections attach." *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2162 (2025) (Sotomayor, *J.*, dissenting) (citing *Mathews*, 424 U.S. at 332). As the Supreme Court has recently reaffirmed, courts' recognition of "the significance of the Government's national security interests" neither eliminates nor reduces "the necessity that such interests be pursued in a manner consistent with the Constitution." *A.A.R.P. v. Trump*, 605 U.S. 91, 96 (2025).

---

[19] One might also argue that the "category of noncitizens" affects the risk of error, since those convicted of serious crimes might be deemed more likely to flee or pose a danger to the community. Since § 1226(c) has now been extended to those convicted of or even simply charged with petty crimes, including shoplifting, this argument carries substantially less weight. *See supra* note 5.

Judge Nardini provides no rationale for how a properly conducted *Mathews* analysis could result in a burden allocation requiring § 1226(c) detainees whose due process rights have been violated by unreasonably prolonged detention to bear the burden of justifying their release.[20] That Congress singled out people with certain criminal histories for detention under § 1226(c) does not change the fact that the government cannot articulate any interest in prolonged detention of individuals whom it cannot show, on an *individualized* basis, are dangerous or flight risks.

### C. There is no relevant Circuit split on *Black*'s burden allocation holding.

Judge Nardini claims that our Sister Circuits' treatment of the procedural protections owed to those detained under §§ 1226(a) and (c) have resulted in "intercircuit incoherence" and "all-over-the-map holdings [that] present more than the usual circuit split." Nardini Dissent at 5–6. He reaches that flawed conclusion by failing to recognize important differences among cases, including what claims were raised and what issues the courts reached. First, there is no Circuit split regarding *Black*'s burden allocation. Second, the § 1226(a) cases on which Judge Nardini relies are easily distinguishable from *Velasco Lopez* and *Black* and provide no reason to reconsider our § 1226(c) ruling. Here, we aim to clarify those important differences, which Judge Nardini overlooks.

---

[20] Judge Nardini claims incorrectly that *Black*'s holding as to the burden allocation treated "the second *Mathews* factor [a]s dispositive." Nardini Dissent at 15. In fact, the relevant section of the *Black* opinion states that: "Our analysis above of the first and third factors applies with equal force to these questions [concerning the burden allocation and the district court's order that the IJ consider Black's ability to pay and alternatives to detention]," and we proceeded to "elaborate briefly on the second *Mathews* factor." *Black,* 103 F.4th at 155.

### 1. *Black* is consistent with the decision of the only other Circuit to reach the burden-allocation issue.

After *Jennings*, only one other Circuit has addressed what due process requires to address unreasonably prolonged detention under § 1226(c). In *German Santos*, the Third Circuit held—just as we did in *Black*—that, once detention under § 1226(c) becomes unconstitutionally prolonged, due process requires a bond hearing at which "the [g]overnment must justify [a detainee's] continued detention by clear and convincing evidence." 965 F.3d at 206; *see also Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011) (same), *vacated in part by Jennings*, 583 U.S. 281 (see *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018)).

### 2. The § 1226(a) decisions of other Circuits did not address the question presented in *Black* and on which Judge Nardini sought en banc review.

Judge Nardini asserts that the "Third, Fourth, and Ninth Circuits . . . have held that due process does not require shifting the burden from the noncitizen to the government in a § 1226(a) bond hearing." Nardini Dissent at 23 (citing *Borbot*, 906 F.3d 274, *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), and *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)). But the noncitizens in those cases failed to show any underlying constitutional violation in their detentions. So it is no surprise that those courts declined to shift the burden of proof to the government as a remedy for due process violations that were not present.

Moreover, none of the out-of-Circuit § 1226(a) decisions that Judge Nardini cites squarely confronted the issue on which he sought rehearing en banc in *Black*: what remedy does due process demand upon a finding of unreasonably

prolonged detention?[21] Indeed, none of those cases held anything about what procedures would be required to remedy unreasonably prolonged detention under § 1226(a). The Third Circuit left for another day the question "when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing." *Borbot*, 906 F.3d at 280. The Fourth Circuit was not presented with any claim of unreasonably prolonged detention. *Miranda*, 34 F.4th at 346. And the Ninth Circuit had "no occasion to consider the constitutional limits of prolonged immigration detention because [petitioner] ha[d] not demonstrated a due process violation." *Rodriguez Diaz*, 53 F.4th at 1214. *See also Hernandez-Lara v. Lyons*, 10 F.4th 19, 25 n.2, 30 n.4 (1st Cir. 2021) (declining to reach petitioner's claim that her unreasonably prolonged detention entitled her to a new bond hearing at which the government bore the burden of proof).

Judge Nardini's analysis of § 1226(a) caselaw fails to distinguish between those courts' assessments of challenges to the procedures at *statutorily required* bond hearings under § 1226(a) and claims of *unreasonably prolonged detention* warranting a *new* bond hearing with a shifted burden. In any event, we unpack those issues here.

---

[21] The decisions that Judge Nardini cites agree on a key underlying principle: where a noncitizen detainee demonstrates a due process violation, the *Mathews* factors apply to determine what process is due. *See Rodriguez Diaz*, 53 F.4th at 1203–07 (collecting cases applying *Mathews* and assuming without deciding that *Mathews* applied to petitioner); *Miranda*, 34 F.4th at 358 (applying *Mathews*); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–28, 41 (1st Cir. 2021) (same); *German Santos*, 965 F.3d at 213 (same). *Borbot* did not discuss *Mathews*, but, as discussed below, the petitioner there failed to demonstrate a due process violation. 906 F.3d at 280.

### a. Several Circuits have addressed the burden of proof at statutorily required § 1226(a) bond hearings, and none conflicts with *Black*.

As discussed, the texts of § 1226(a) and its accompanying regulations are silent as to who bears the burden of proof at a bond hearing before an IJ. BIA precedent, however, places the burden on the noncitizen. *Matter of Guerra*, 24 I. & N. Dec. at 40; 8 C.F.R. § 236.1(c)(8). Neither *Black* nor *Velasco Lopez* casts doubt on that procedure.

The Fourth Circuit in *Miranda* and the Ninth Circuit in *Rodriguez Diaz* upheld existing BIA precedent placing the burden on detainees at ordinary § 1226(a) bond hearings that are convened as a matter of course under § 1226(a)'s related regulation. *Miranda*, 34 F.4th at 346 (rejecting due process challenge to the burden allocation at § 1226(a) bond hearings governed by BIA precedent, finding that the noncitizens "are unable to establish a likelihood of success on their due process claims"); *Rodriguez Diaz*, 53 F.4th at 1210, 1212 (rejecting challenge that § 1226(a) detainee "should not have borne the burden of proof at his initial bond hearing," concluding that "[n]othing in this record suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error").

The First Circuit's holding in *Hernandez-Lara*, 10 F.4th 19, *does* conflict with the Fourth and Ninth Circuit decisions, but not in any way that implicates our holding in *Black*. In *Hernandez-Lara*, after the petitioner failed to meet her burden at an initial bond hearing under § 1226(a), she filed a habeas petition arguing that (i) her initial bond hearing was constitutionally inadequate because she was made to bear the burden of proof, and (ii) her prolonged detention violated due

31

process and thus an additional bond hearing was warranted, at which the government must bear the burden of proof. The First Circuit addressed the first argument and declined to address the second. *Id.* at 25 n.2, 30 n.4. As to the *initial* § 1226(a) bond hearing, the First Circuit took the position that "due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Id.* at 41.

Nothing about this conflict warrants reconsidering our holding in *Black* on unreasonably prolonged detention under § 1226(c) without a bond hearing. The First Circuit's split with other Circuits on the proper burden allocations for statutorily required § 1226(a) bond hearings would exist regardless of *Black* and *Velasco Lopez*.

### b. Other Circuits have not squarely addressed the burden of proof at bond hearings required as a remedy for unreasonably prolonged detention under § 1226(a).

The decisions on which Judge Nardini relies say very little about unreasonably prolonged detention, at issue in *Black* and *Velasco Lopez*: Prolonged detention was not before the Fourth Circuit in *Miranda*. The First Circuit declined to address Hernandez-Lara's prolonged detention claim. *Hernandez-Lara*, 10 F.4th at 25 n.2, 30 n.4.[22] And the Ninth Circuit in *Rodriguez Diaz* had "no occasion to

---

[22] The Ninth Circuit in *Rodriguez Diaz* incorrectly characterized *Hernandez-Lara* as addressing the bond allocation procedures required upon "prolonged" detention under § 1226(a). *Rodriguez Diaz*, 53 F.4th at 1204. The *Hernandez-Lara* Court did "find the potential length of detention under section 1226(a) relevant to the weight of the liberty interest at stake" when determining what *initial* procedures were required, but declined to reach the argument that, once detention became unreasonably prolonged, Hernandez-Lara was entitled to a new bond hearing at which the government would bear the burden of proof. 10 F.4th at 30 n.4.

consider the constitutional limits of prolonged immigration detention because Rodriguez Diaz ha[d] not demonstrated a due process violation." 53 F.4th at 1214.

Judge Nardini contends that the differing outcomes in the Third Circuit's decisions in *Borbot* and *German Santos* warrant rehearing in *Black*. Nardini Dissent at 27–29. But he overlooks fundamental differences that demonstrate the consistency between these two cases. *German Santos* involved detention under § 1226(c) that became unreasonably prolonged in violation of the Fifth Amendment; *Borbot*, in contrast, involved detention under § 1226(a) that the Third Circuit expressly determined had *not* become unreasonably prolonged. *See Borbot*, 906 F.3d at 279–80. The sole basis of Borbot's due process challenge was the duration of that detention after his initial hearing was conducted.[23] Having found it was not overlong, the Third Circuit had little difficulty rejecting Borbot's argument that the burden must shift to the government in such a second hypothetical bond hearing under § 1226(a). Indeed, Borbot was not entitled to a new bond hearing at all. That § 1226(c) detainees were entitled under Third Circuit precedent to shift the burden at bond hearings following unreasonably prolonged detention, *id.* at 279, was of no moment in the context of Borbot's

---

[23] Judge Nardini contends that "[o]ne might argue that [*Borbot*] addressed due process requirements only for the *initial* bond hearing, not for a hearing once the detention has become unreasonably prolonged," and "any attempt to cabin *Borbot* to initial § 1226(a) hearings would be unpersuasive." Nardini Dissent at 24–25. But Borbot did not advance any argument that he was denied due process in his initial § 1226(a) hearing. *See Borbot*, 906 F.3d at 279 ("Borbot's habeas petition seeks to compel a *second* bond hearing *despite alleging no constitutional defect in the one he received*." (emphasis added)). The Third Circuit thus issued no holding on that question.

claims: as the *Borbot* Court explained, habeas petitioners detained under § 1226(c) are "not situated similarly" to § 1226(a) detainees. *See id.*

Accordingly, aside from *German Santos*, none of the cases Judge Nardini cites answers the question posed by *Velasco Lopez* and *Black*: when detention under either § 1226(a) or § 1226(c) has become unreasonably prolonged, what process does the Constitution require? Meanwhile, Judge Nardini overlooks case law that guides us to view an individual's liberty interest in freedom from detention on a continuum, with the amount of process necessary to protect that liberty interest increasing over time. And indeed, a standard of proof "serves to allocate the risk of error between the litigants" and reflects the "relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979). The Supreme Court has repeatedly reaffirmed the principle that "due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (internal quotation marks omitted). And the Supreme Court has recognized that when confinement becomes prolonged, due process requires enhanced protections to ensure detention remains reasonable in relation to its purpose. *See Zadvydas*, 533 U.S. at 701 ("[F]or detention to remain reasonable," greater justification is needed "as the period of . . . confinement grows."). *Black* does no more than implement these principles.

## V.    CONCLUSION

In sum, *Black* was correctly decided and the Court appropriately denied the petition for rehearing en banc. Judge Menashi's dissent relies on

34

misconceptions about the panel's holding and misapprehensions about the Supreme Court's rulings, none of which are shared by any party to this case. Rehearing en banc is also correctly denied because arguments advanced now by Judge Menashi were not raised or developed by any party, either in the initial appeal or in the petition for rehearing. Even if this Court were to adopt his ill-formed views, that would not cure the split created by the Eighth Circuit's deeply flawed reasoning in *Banyee*. *Black* is wholly in accord with the only other Circuit to address what bond hearing procedures are constitutionally required to remedy unreasonably prolonged detention under § 1226(c). *See German Santos*, 965 F.3d 203.

Judge Nardini's dissent likewise misapprehends the significance of the differences between the detention regimes set out in § 1226(a) and § 1226(c), the reasoning of *Velasco Lopez*, and the import of other Circuits' treatment of challenges to § 1226(a) detention. His dissent also fails to distinguish between challenges to the procedures governing § 1226(a) bond hearings that are provided as a matter of course and challenges to unreasonably prolonged detention that seek a *new* bond hearing with a shifted burden.

The burden allocation in *Black* was the product of a careful *Mathews* analysis and was designed to remedy the due process violation resulting from unreasonably prolonged detention under § 1226(c). Without meaningfully engaging with that *Mathews* analysis, Judge Nardini asserts that he would prefer that the remedial bond hearing burden allocation ordered in *Black* be the same as the burden allocation for § 1226(a) hearings convened as a matter of course. But the different burden allocations in these two situations, as *Velasco Lopez* and *Black*

explained, is warranted precisely because the balance of interests under the *Mathews* framework shifts once detention becomes unreasonably prolonged. What may be adequate at the outset of detention becomes inadequate when detention has become unreasonably prolonged.

We emphasize that § 1226(c) has been amended since our decision in *Black*. Under the new law, additional categories of noncitizens without any criminal conviction are now subject to mandatory detention as "criminal aliens." Now, for instance, a noncitizen who "is charged with" or "arrested for" "any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense" "shall" be detained under § 1226(c). 8 U.S.C. § 1226(c)(1)(E)(ii). Judge Nardini states that he does not "believe that the amendments provide support for the Court's decision to abstain from rehearing," and that "our *en banc* Court would not have been called upon to express a view on the revised statute because these two petitioners [in *Black*] were convicted of crimes covered by the prior version." Nardini Dissent at 32. We are not persuaded. The new breadth of § 1226(c) may call for new considerations better left to a future panel, and convening en banc here might well confuse the issues.

For all of these reasons, a majority of the active judges of this Court correctly concluded that this case did not warrant en banc review.